(Slip Opinion)       OCTOBER TERM, 2011       1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MARTEL, WARDEN *v.* CLAIR

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1265.   Argued December 6, 2011—Decided March 5, 2012

Respondent Clair was charged with capital murder for the 1984 slaying of Linda Rodgers.  The main evidence at his trial in California state court came from statements Clair made to his former girlfriend in a conversation that she secretly recorded for the police.  He was convicted and sentenced to death, and his verdict was upheld on direct review.

In 1994, Clair commenced federal habeas proceedings by filing a request for appointment of counsel, which the District Court granted under 18 U. S. C. §3599.  That statute entitles indigent capital habeas petitioners like Clair to appointed counsel.  It also contemplates that appointed counsel may be "replaced . . . upon motion of the defendant," §3599(e), but it does not specify a standard for district courts to use in evaluating those motions.  Clair's counsel filed his initial habeas petition in 1994, and in the late 1990's, when two associates from the firm representing Clair moved to the Office of the Federal Public Defender (FPD), the FPD was substituted as counsel of record.  The District Court held an evidentiary hearing on Clair's habeas petition in August 2004, and the parties submitted their post-hearing briefs by February 2005.  The court subsequently told the parties that it did not wish to receive further material about the petition.  In March, Clair moved to substitute counsel, claiming that his attorneys were seeking only to overturn his death sentence, not to prove his innocence.  After the court asked the parties to address the motion, Clair's counsel informed it that they had met with Clair and that he wanted the FPD to continue representing him.  The court accordingly decided that it would take no action.  Six weeks later, however, Clair filed another substitution motion, adding one more charge to his earlier claims: that his private investigator had discovered that

certain physical evidence from the crime scene had never been fully tested, but that Clair's attorneys had done nothing to analyze this evidence or follow up on its discovery. The court denied the renewed motion without further inquiry. On the same day, it also denied Clair's habeas petition.

Clair sought review of his substitution motion *pro se*, and the FPD appealed the habeas ruling. The Ninth Circuit asked the FPD to address whether substitution was now warranted, and after the FPD informed the court that the attorney-client relationship had broken down, the court provided Clair with a new lawyer. Clair then asked the District Court to vacate the denial of his habeas petition under Federal Rule of Civil Procedure 60(b), arguing that he should be allowed to explore the significance of the new physical evidence for his case. The District Court rejected his request, and Clair appealed. Consolidating his appeals, the Ninth Circuit vacated the District Court's denial of both his substitution request and his habeas petition. Holding that the "interests of justice" standard used in non-capital cases, see 18 U. S. C. §3006A, should govern substitution motions like Clair's, it ruled that the District Court abused its discretion by failing to inquire into the complaints in Clair's second letter. Because Clair had already received new counsel on appeal, the court decided the best remedy was to treat Clair's new counsel as though he had been appointed in June 2005 and to allow him to make whatever submissions he would have made then, including a motion to amend Clair's habeas petition in light of new evidence.

*Held:*

1. When evaluating motions to substitute counsel in capital cases under 18 U. S. C. §3599, courts should employ the same "interests of justice" standard that applies in non-capital cases under §3006A. Pp. 6–12.

    (a) Although §3599 guarantees that indigent capital defendants and petitioners seeking federal habeas relief in capital cases will receive the assistance of counsel, see, *e.g.,* §§3599(a)(1), (a)(2), (e), and contemplates that an appointed attorney may be "replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant," §3599(e), the statute fails to specify how a court should decide such a motion. Clair argues, and the Ninth Circuit agreed, that district courts should use the "in the interests of justice" standard of §3006A, which governs the appointment and substitution of counsel in federal non-capital litigation. By contrast, the State contends that an appointed lawyer can only be replaced when the defendant has suffered an "actual or constructive denial" of counsel—that is, when the lawyer lacks the requisite statutory qualifications, has a conflict of interest, or has completely abandoned the

client.

The Court adopts Clair's approach, based on the history of §3599. Before 1988, §3006A governed both capital and non-capital cases, authorizing courts to appoint counsel for federal habeas petitioners and providing that in all cases in which a court had appointed counsel, substitution motions should be decided "in the interests of justice." §3006A(c). Thus, a court in those days would have used that standard to evaluate a request like Clair's. In 1988, Congress enacted what is now §3599, thus displacing §3006A for persons facing execution. The new statute grants federal capital defendants and capital habeas petitioners enhanced rights of representation. Habeas petitioners facing execution now receive counsel as a matter of right, see §3599(a)(2), and in multiple ways the statute aims to improve the quality of their representation: it provides them with more experienced counsel than §3006A demands, authorizes higher rates of compensation, and provides more money for investigative and expert services. These measures "reflec[t] a determination that quality legal representation is necessary" in all capital proceedings to foster "fundamental fairness in the imposition of the death penalty." *McFarland* v. *Scott*, 512 U. S. 849, 855, 859. Given this context, the Court cannot conclude that Congress silently prescribed a substitution standard that would make it more difficult for those facing capital punishment to substitute counsel. Adopting a more stringent test than §3006A's would deprive capital defendants of a tool they formerly had, and non-capital defendants still have, to handle serious representational problems. By contrast, utilizing §3006A's standard comports with the myriad ways that §3599 seeks to promote effective representation for persons facing capital punishment. Pp. 6–9.

(b) The dearth of support for the State's alternative standard reinforces this conclusion. The State concedes that Congress has not considered its standard in any context; neither has a federal court used it in any case. The Court prefers to use a familiar standard, already known to work, than to try out a new one. Moreover, the State's proposed test would gut §3599's substitution provision, because even absent that provision courts would have an obligation to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation. The State counters that only its approach comports with the rule that habeas petitioners generally have no Sixth Amendment right to counsel. But Congress declined to track that Amendment in providing statutory rights to counsel in both §3006A and §3599. Thus, the scope of the Amendment cannot answer the statutory question presented here. The State also contends that the "interests of justice" standard will permit substitution motions to become a mechanism to defer enforcement of a death sen-

tence. But the "interests of justice" standard takes into account whether a substitution motion will cause undue delay. Pp. 9–12.

2. The District Court did not abuse its discretion in denying Clair's second request for new counsel under §3599's "interests of justice" standard. In reviewing substitution motions, the courts of appeals have pointed to several relevant considerations, including: the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client. Because a trial court's decision on substitution is so fact-specific, it deserves deference and may be overturned only for an abuse of discretion.

Here, the District Court received Clair's second substitution motion on the eve of deciding his 10-year-old habeas petition. Just three months earlier, Clair had written the court to complain about his attorneys. After making proper inquiry, the court learned that Clair and his counsel had settled their dispute and turned once more to ruling on Clair's habeas petition, only to receive a second letter six weeks later. In it Clair maintained his general assertion that his lawyers were not trying to prove his innocence, but he also alleged a new and significant charge of attorney error: that counsel had refused to investigate particular, newly located physical evidence. Such a charge normally would require the court to make further inquiry; a district court cannot usually rule on a substitution motion without exploring why a defendant wants new counsel. But here, the motion's timing precludes a holding that the District Court abused its discretion. The court received the letter while putting the finishing touches on its denial of Clair's habeas petition. After years of litigation, an evidentiary hearing, and post-hearing briefing, the court had instructed the parties that it would accept no further submissions. All proceedings had therefore come to a close, and a new attorney could have done nothing further in the District Court. In those circumstances, the District Court acted within its discretion in denying Clair's substitution motion. Pp. 13–16.

403 Fed. Appx. 276, reversed and remanded.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–1265

———————

## MICHAEL MARTEL, WARDEN, PETITIONER *v.* KENNETH CLAIR

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 5, 2012]

JUSTICE KAGAN delivered the opinion of the Court.

A federal statute, §3599 of Title 18, entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings. The statute contemplates that appointed counsel may be "replaced . . . upon motion of the defendant," §3599(e), but it does not specify the standard that district courts should use in evaluating those motions. We hold that courts should employ the same "interests of justice" standard that they apply in non-capital cases under a related statute, §3006A of Title 18. We also hold that the District Court here did not abuse its discretion in denying respondent Kenneth Clair's motion to change counsel.

I

This case arises from the murder of Linda Rodgers in 1984. Rodgers resided at the home of Kai Henriksen and Margaret Hessling in Santa Ana, California. Clair was a squatter in a vacant house next door. About a week prior to the murder, police officers arrested Clair for burglarizing the Henriksen-Hessling home, relying on information Henriksen had provided. On the night the police released

Clair from custody, Hessling returned from an evening out to find Rodgers' dead body in the master bedroom, naked from the waist down and beaten, stabbed, and strangled. Some jewelry and household items were missing from the house. See *People* v. *Clair*, 2 Cal. 4th 629, 644–647, 828 P. 2d 705, 713–714 (1992); App. to Pet. for Cert. 23–24.

The district attorney charged Clair with Rodgers' murder and sought the death penalty. No forensic evidence linked Clair to the crime; instead, the main evidence against Clair came from his former girlfriend, Pauline Flores. Although she later recanted her testimony, see App. 36–42, Flores stated at trial that she and Clair were walking in the neighborhood on the night of the murder and split up near the Henriksen-Hessling house. When they reunited about an hour later, Flores recounted, Clair was carrying jewelry and other items and had blood on his right hand. According to Flores, Clair explained to her that he had "just finished beating up a woman." *Clair*, 2 Cal. 4th, at 647, 828 P. 2d, at 714. The prosecution then introduced a tape recording of a talk between Flores and Clair several months after the murder, which Flores had made in cooperation with the police. On that tape, Clair at one point denied committing the murder, but also made several inculpatory statements. For example, when Flores told Clair that she had seen blood on him, he replied "Ain't on me no more" and "They can't prove nothing." App. to Pet. for Cert. 53 (internal quotation marks omitted). And in response to her continued probing, Clair explained "[W]hat you fail to realize, how . . . they gonna prove I was there . . . ? There ain't no . . . fingerprints, ain't no . . . body seen me go in there and leave out there." *Id.,* at 53–54 (internal quotation marks omitted). The jury convicted Clair and sentenced him to death. The California Supreme Court upheld the verdict, and this Court denied review, *Clair* v. *California*, 506 U. S. 1063 (1993).

Clair commenced federal habeas proceedings by filing a

request for appointment of counsel, which the District Court granted under §3599. Clair and his counsel filed an initial petition for habeas relief in 1994 and, after exhausting state remedies, an amended petition the following year. The petition alleged more than 40 claims, involving such matters as jury selection and composition, sufficiency of the evidence, prosecutorial misconduct, nondisclosure of exculpatory materials relating to state witnesses, and ineffectiveness of trial counsel. In the late 1990's, two associates from the firm representing Clair took jobs at the Office of the Federal Public Defender (FPD), and the court substituted that office as counsel of record. The court held an evidentiary hearing on Clair's habeas petition in August 2004, and the parties submitted post-hearing briefs by February 2005. The court subsequently informed the parties that it viewed the briefing "to be complete and d[id] not wish to receive any additional material" about the petition. App. 3–4.

On March 16, 2005, Clair sent a letter to the court stating that the FPD attorneys "no longer . . . ha[d] [his] best interest at hand" and that he did not want them to continue to represent him. *Id.,* at 24; see *id.,* at 18–25. Clair alleged that the lawyers had repeatedly dismissed his efforts to participate in his own defense. Prior to the evidentiary hearing, Clair wrote, he had become so frustrated with the attorneys that he enlisted a private detective to look into his case. But the lawyers, Clair charged, refused to cooperate with the investigator; they were seeking only to overturn his death sentence, rather than to prove his innocence. As a result, Clair felt that he and his counsel were not "on the same team." *Id.,* at 23.

The District Court responded by asking both parties to address Clair's motion to substitute counsel. See *id.,* at 18. The State noted that "[w]hat the trial court does with respect to appointing counsel is within its discretion, providing the interests of justice are served." *Id.,* at 29.

The State further advised the court that "nothing in [Clair's] letter require[d] a change" of counsel because the FPD lawyers had provided appropriate representation and substitution would delay the case. *Ibid.* Clair replied to the court's request through his FPD attorneys on April 26, 2005. Their letter stated: "After meeting with Mr. Clair, counsel understands that Mr. Clair wants the [FPD] to continue to serve as his counsel in this case at this time." *Id.,* at 27. On the basis of that representation, the court determined that it would "take no further action on the matter at this time." *Id.,* at 33.

But the issue resurfaced just six weeks after the court's decision. On June 16, 2005, Clair wrote a second letter to the court asking for substitution of counsel. That letter again asserted a "total break down of communication" between Clair and the FPD; according to Clair, he was "no longer able to trust anybody within that office." *Id.,* at 62–63. In explaining the source of the problem, Clair reiterated each of the points made in his prior complaint. And then he added one more. Clair recounted that his private investigator had recently learned that the police and district attorney's office were in possession of fingerprints and other physical evidence from the crime scene that had never been fully tested. The FPD lawyers, Clair asserted, were doing nothing to analyze this evidence or otherwise follow up on its discovery. Clair attributed this failure, too, to the FPD's decision to focus on his sentence, rather than on questions of guilt.

Two weeks later, the District Court denied Clair's renewed request for substitution without further inquiry. The court stated: "It does not appear to the Court that a change of counsel is appropriate. It appears that [Clair's] counsel is doing a proper job. No conflict of interest or inadequacy of counsel is shown." *Id.,* at 61. On the same day, the court denied Clair's habeas petition in a detailed opinion. *Clair* v. *Brown*, Case No. CV 93–1133 GLT (CD

Cal., June 30, 2005), App. to Pet. for Cert. 20–91.

Clair sought review of his substitution motion *pro se*, while the FPD filed a notice of appeal from the denial of his habeas petition. The Court of Appeals for the Ninth Circuit instructed the FPD to address whether substitution of counsel was now warranted, and in October 2005, the FPD informed the court that "the attorney-client relationship ha[d] broken down to such an extent that substitution of counsel [would be] appropriate." Attorney for Appellant's Response to Court's Sept. 15, 2005 Order, in No. 05–99005 (CA9), Record, Doc. 9, p. 1. The State did not comment or object, and the Court of Appeals provided Clair with a new lawyer going forward. Clair then asked the District Court to vacate the denial of his habeas petition under Federal Rule of Civil Procedure 60(b), arguing that he should be allowed to explore the significance of the new physical evidence for his case. The District Court (with a new judge assigned, because the judge previously handling the case had retired) rejected that request on the ground that the new evidence did not pertain to any of the claims presented in Clair's habeas petition. See App. to Pet. for Cert. 9–10. Clair appealed that decision as well.[1]

After consolidating Clair's appeals, the Ninth Circuit vacated the trial court's denial of both Clair's request for new counsel and his habeas petition. See *Clair* v. *Ayers*, 403 Fed. Appx. 276 (2010). The Court of Appeals' opinion focused on Clair's substitution motion. Holding that the "interests of justice" standard should apply to that motion,

—————

[1] While litigating his Rule 60(b) motion in the District Court, Clair also pursued discovery in the California state courts relating to the newly found physical evidence. On the basis of material he obtained, Clair filed another petition for state habeas relief, alleging (among other claims) actual innocence and improper suppression of exculpatory material under *Brady* v. *Maryland*, 373 U. S. 83 (1963). The California Supreme Court summarily denied that petition. See *In re Clair*, No. S169188 (Aug. 24, 2011).

the Ninth Circuit ruled that the District Court abused its discretion by failing to inquire into the complaints in Clair's second letter. See *id.,* at 278. The Court of Appeals then considered how to remedy that error, given that Clair had received new counsel while on appeal. It decided that "the most reasonable solution" was to "treat Clair's current counsel as if he were the counsel who might have been appointed" in June 2005, and to allow him to make whatever submissions he would have made then, including a motion to amend Clair's habeas petition in light of new evidence. *Id.,* at 279.

We granted certiorari to review this judgment, 564 U. S. __ (2011), and now reverse.

## II

We first consider the standard that district courts should use to adjudicate federal habeas petitioners' motions to substitute counsel in capital cases. The question arises because the relevant statute, 18 U. S. C. §3599, contains a notable gap. Section 3599 first guarantees that indigent defendants in federal capital cases will receive the assistance of counsel, from pretrial proceedings through stay applications. See §§3599(a)(1), (a)(2), (e). It next grants a corresponding right to people like Clair who seek federal habeas relief from a state death sentence, for all post-conviction proceedings and related activities. See §§3599(a)(2), (e); *McFarland* v. *Scott,* 512 U. S. 849, 854–855 (1994); *Harbison* v. *Bell,* 556 U. S. 180, 183–185 (2009). And the statute contemplates that both sets of litigants may sometimes substitute counsel; it notes that an attorney appointed under the section may be "replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant." §3599(e).[2] But

--------

[2] Section 3599(e) provides in full:

"Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appoint-

here lies the rub: The statute fails to specify how a court should decide such a motion. Section 3599 says not a word about the standard a court should apply when addressing a request for a new lawyer.

The parties offer us two alternative ways to fill this statutory hole. Clair argues, and the Ninth Circuit agreed, that district courts should decide substitution motions brought under §3599 "in the interests of justice." That standard derives from 18 U. S. C. §3006A, which governs the appointment and substitution of counsel in federal *non*-capital litigation. By contrast, the State contends that district courts may replace an appointed lawyer under §3599 only when the defendant has suffered an "actual or constructive denial" of counsel. Brief for Petitioner 33. That denial occurs, the State asserts, in just three situations: when the lawyer lacks the qualifications necessary for appointment under the statute; when he has a "disabling conflict of interest"; or when he has "completely abandoned" the client. *Id.*, at 34. On this matter, we think Clair, not the State, gets it right.

A trip back in time begins to show why. Prior to 1988, §3006A governed the appointment of counsel in *all* federal criminal cases and habeas litigation, regardless whether the matter involved a capital or a non-capital offense. That section provided counsel as a matter of right to most indigent criminal defendants, from pre-trial proceedings through appeal. See §§3006A(a)(1), (c) (1982 ed.). In

_____

ed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant."

addition, the statute authorized courts to appoint counsel for federal habeas petitioners when "the interests of justice so require[d]," §3006A(g); and under that provision, courts almost always appointed counsel to represent petitioners convicted of capital offenses, see Ruthenbeck, Dueling with Death in Federal Courts, 4 ABA Criminal Justice, No. 3, pp. 2, 42 (Fall, 1989). In all cases in which a court had appointed counsel, §3006A further provided (as it continues to do) that substitution motions should be decided "in the interests of justice." §3006A(c). So in those days, a court would have used that standard to evaluate a request like Clair's.

In 1988, Congress enacted the legislation now known as §3599 to govern appointment of counsel in capital cases, thus displacing §3006A for persons facing execution (but retaining that section for all others). See Anti-Drug Abuse Act, 102 Stat. 4393–4394, 21 U. S. C. §§848(q)(4)–(10) (1988 ed.) (recodified at 18 U. S. C. §3599 (2006 ed. and Supp. IV)). The new statute grants federal capital defendants and capital habeas petitioners enhanced rights of representation, in light of what it calls "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." §3599(d) (2006 ed.). Habeas petitioners facing execution now receive counsel as a matter of right, not an exercise of the court's discretion. See §3599(a)(2). And the statute aims in multiple ways to improve the quality of representation afforded to capital petitioners and defendants alike. Section 3599 requires lawyers in capital cases to have more legal experience than §3006A demands. Compare §§3599(b)–(d) with §3006A(b). Similarly, §3599 authorizes higher rates of compensation, in part to attract better counsel. Compare §3599(g)(1) with §3006A(d) (2006 ed. and Supp. IV). And §3599 provides more money for investigative and expert services. Compare §§3599(f) (2006 ed.), (g)(2) (2006 ed., Supp. IV), with §3006A(e) (2006 ed. and Supp. IV). As we

have previously noted, those measures "reflec[t] a determination that quality legal representation is necessary" in all capital proceedings to foster "fundamental fairness in the imposition of the death penalty." *McFarland*, 512 U. S., at 855, 859.

That understanding of §3599's terms and origins goes far toward resolving the parties' dispute over what standard should apply. We know that before §3599's passage, courts used an "interests of justice" standard to decide substitution motions in all cases—and that today, they continue to do so in all non-capital proceedings. We know, too, that in spinning off §3599, Congress enacted a set of reforms to improve the quality of lawyering in capital litigation. With all those measures pointing in one direction, we cannot conclude that Congress silently prescribed a substitution standard that would head the opposite way. Adopting a more stringent test than §3006A's would deprive capital defendants of a tool they formerly had, and defendants facing lesser penalties still have, to handle serious representational problems. That result clashes with everything else §3599 does. By contrast, utilizing §3006A's standard comports with the myriad ways that §3599 seeks to promote effective representation for persons threatened with capital punishment.

The dearth of support for the State's alternative standard reinforces the case for borrowing from §3006A. Recall that the State thinks substitution proper "only when . . . counsel is completely denied"—which, the State says, occurs when counsel lacks the requisite experience; "actively represents conflicting interests"; or has "total[ly] desert[ed]" the client. Brief for Petitioner 15, 35, 38. As the State acknowledges, this test comes from . . . well, from nowhere. The State conceded during argument that Congress has not considered (much less adopted) the standard in any context; neither has a federal court used it in any case. See Tr. of Oral Arg. 16. Indeed, the stand-

ard is new to the State's own attorneys. As noted earlier, when Clair first requested a change of counsel, the State responded that substitution is a "matter . . . of trial court discretion," based on "the interests of justice." App. 29; see *supra,* at 3–4. Only later did the State devise its present proposal. Inventiveness is often an admirable quality, but here we think the State overdoes it. To be sure, we must infer a substitution standard for §3599; in that sense, we are writing on a blank slate. But in undertaking that task, we prefer to copy something familiar than concoct something novel. That enables courts to rely on experience and precedent, with a standard already known to work effectively.

Still worse, the State's proposed test guts §3599's provision for substitution motions. See §3599(e) (2006 ed.) (appointed counsel may be "replaced . . . upon motion of the defendant"). According to the State, a court may not change counsel under §3599 even if the attorney-client relationship has broken down, so long as the lawyer has the required qualifications and is "act[ing] as an advocate." Brief for Petitioner 35. And that is so, continues the State, even when substitution will not cause delay or other prejudice—because again, the defendant retains a functioning lawyer. See *id.,* at 34. That approach, as already noted, undermines Congress's efforts in §3599 to enhance representation in capital cases. See *supra,* at 8–9. And beyond that, it renders §3599's substitution provision superfluous. Even in the absence of that provision, a court would have to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation; for example, the court would have to appoint new counsel if the first lawyer developed a conflict with or abandoned the client. So by confining substitution to cases in which the defendant has no counsel at all, the State's proposal effectively deletes §3599's substitution clause.

The State counters that only its approach comports with

"this Court's long-established jurisprudence that habeas prisoners, including capital prisoners," have no right to counsel under the Sixth Amendment. Brief for Petitioner 18; see *Murray* v. *Giarratano*, 492 U. S. 1, 10, 12 (1989) (plurality opinion); *id.,* at 14–15 (KENNEDY, J., concurring in judgment); cf. *Coleman* v. *Thompson*, 501 U. S. 722, 755 (1991) (reserving question of whether the Sixth Amendment guarantees counsel when a habeas proceeding provides the first opportunity to raise a claim). But we do not understand the State's basis for linking use of the "interests of justice" standard to cases in which an individual has a Sixth Amendment right. A statute need not draw the same lines as the Constitution, and neither §3006A nor §3599 does so in addressing the substitution of counsel. Section 3006A applies the "interests of justice" standard to substitution motions even when the Sixth Amendment does not require representation; that is presumptively so, for example, when a court provides counsel to a non-capital habeas petitioner. See §§3006A(a)(2)(B), (c). And whatever standard we adopt for §3599 will likewise apply both to litigants who have and to litigants who lack a Sixth Amendment right, because the section offers counsel on the same terms to capital defendants and habeas petitioners. In providing statutory rights to counsel, Congress declined to track the Sixth Amendment; accordingly, the scope of that Amendment cannot answer the statutory question presented here.

The State's stronger argument relates to delay in capital proceedings. Under the "interests of justice" standard, the State contends, substitution motions will become a mechanism to defer enforcement of a death sentence, contrary to historic restrictions on "abuse of the writ" and to the goals of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See Brief for Petitioner 19–22. But this argument, like the last, forgets that §3599 reaches not just habeas petitioners but also criminal defendants, who have

not been convicted or sentenced and therefore have no incentive to delay. Moreover, the State's claim misjudges the capacity of the "interests of justice" standard to deal with such issues. Protecting against abusive delay *is* an interest of justice. Because that is so, courts addressing substitution motions in both capital and non-capital cases routinely consider issues of timeliness. See, *e.g., Hunter* v. *Delo*, 62 F. 3d 271, 274 (CA8 1995) (citing "the need to thwart abusive delay" in affirming the denial of a habeas petitioner's substitution motion); *United States* v. *White*, 451 F. 2d 1225, 1226 (CA6 1971) *(per curiam)* (approving a District Court's refusal to change counsel under §3006A(c) "on the morning of the trial"). Indeed, we will do so, just paragraphs from here, in this very case. See *infra*, at 15–16. The standard we adopt thus takes account of, rather than ignores or opposes, the State's interest in avoiding undue delay.[3]

─────────────

[3] The State also makes a more specific argument based on AEDPA, see Brief for Petitioner 26–29, but we think it is not well taken. The State notes that the "interests of justice" standard enables a court, when ruling on a substitution motion, to take account of a lawyer's effectiveness. That consideration, according to the State, conflicts with AEDPA's injunction that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a [habeas] proceeding arising under section 2254." 28 U. S. C. §2254(i); see §2261(e) (using similar language). But most naturally read, §2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings, not from substituting counsel on that ground. Cf. *Holland* v. *Florida*, 560 U. S. ___, ___ (2010) (slip op., at 18) (holding that §2254(i) does not preclude equitable tolling of a statute of limitations based on attorney misconduct in habeas proceedings). Indeed, if the State were right, we would also have to find that AEDPA silently repealed §3006A's instruction to courts to apply the "interests of justice" standard in non-capital habeas cases. We see nothing to suggest that Congress had that result in mind.

## III

The remaining question is whether the District Court abused its discretion in denying Clair's second request for new counsel under §3599's "interests of justice" standard. We do not think the court did so, although the court's failure to make any inquiry into Clair's allegations makes this decision harder than necessary.

As its name betrays, the "interests of justice" standard contemplates a peculiarly context-specific inquiry. So we doubt that any attempt to provide a general definition of the standard would prove helpful. In reviewing substitution motions, the courts of appeals have pointed to several relevant considerations. Those factors may vary a bit from circuit to circuit, but generally include: the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict). See, *e.g., United States* v. *Prime*, 431 F. 3d 1147, 1154 (CA9 2005); *United States* v. *Doe*, 272 F. 3d 116, 122–123 (CA2 2001); *Hunter*, 62 F. 3d, at 274; *United States* v. *Welty*, 674 F. 2d 185, 188 (CA3 1982). Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion.

The District Court here received Clair's second substitution motion on the eve of deciding his 10-year-old habeas petition. Recall that three months earlier, following an evidentiary hearing and post-hearing briefing, Clair had written the court to complain about his attorneys. In that first letter, Clair accused his lawyers of refusing to cooperate with a private detective and, more generally, of forgoing efforts to prove his innocence. After making proper inquiry, the court learned that Clair and his attorneys had worked through their dispute and Clair no long-

er wanted to substitute counsel. The court thus turned its attention once again to ruling on Clair's habeas petition— only to receive another letter requesting a change in representation.

If that second letter had merely recapitulated the charges in the first, this case would be relatively simple. Even then, the court might have done well to make further inquiry of Clair and his counsel. As all Circuits agree, courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer. See, *e.g., United States* v. *Iles*, 906 F. 2d 1122, 1130 (CA6 1990) ("It is hornbook law that '[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction . . .'" (quoting 2 W. LaFave & J. Israel, Criminal Procedure §11.4, p. 36 (1984))). Moreover, an on-the-record inquiry into the defendant's allegations "permit[s] meaningful appellate review" of a trial court's exercise of discretion. *United States* v. *Taylor*, 487 U. S. 326, 336–337 (1988). But here the court had inquired, just a short time earlier, into Clair's relationship with his lawyers. The court knew that Clair had responded to that inquiry by dropping his initial complaints. And the court had reason to think, based on 10 years of handling the case, that those charges lacked merit: Perhaps most important, the court knew that the lawyers had raised many challenges not just to Clair's sentence, but to his conviction, including to the sufficiency of the State's evidence. See, *e.g.*, App. to Pet. for Cert. 27– 69. Especially at this stage of the litigation, those factors would have provided ample basis to reject a simple reprise of Clair's allegations.

What complicates this case is that in his second letter, Clair added a new and significant charge of attorney error. Beyond asserting generally that his lawyers were not

trying to prove his innocence, Clair now alleged that counsel had refused to investigate particular, newly located physical evidence. That evidence, according to Clair, might have shown that the police had suppressed *Brady* material, that his trial counsel had been ineffective in investigating the murder, or that he had not committed the offense. See Tr. of Oral Arg. 45–46. Especially in a case lacking physical evidence, built in part on since-recanted witness testimony, those possibilities cannot be blithely dismissed. In the mine run of circumstances, Clair's new charge would have required the court to make further inquiry before ruling on his motion for a new attorney.

But here, the timing of that motion precludes a holding that the District Court abused its discretion. The court received Clair's second letter while putting the finishing touches on its denial of his habeas petition. (That lengthy decision issued just two weeks later.) After many years of litigation, an evidentiary hearing, and substantial post-hearing briefing, the court had instructed the parties that it would accept no further submissions. See App. 3–4; Tr. of Oral Arg. 4–5. The case was all over but the deciding; counsel, whether old or new, could do nothing more in the trial court proceedings. At that point and in that forum, Clair's conflict with his lawyers no longer mattered.

Clair, to be sure, wanted to press his case further in the District Court. He desired a new lawyer, after examining the physical evidence, to make whatever claims followed from it. But, notably, all of those claims would have been new; as the District Court later found in ruling on Clair's Rule 60(b) motion, the physical evidence did not relate to any of the claims Clair had previously made in his habeas petition. See App. to Pet. for Cert. 9–10. A substitute lawyer thus would have had to seek an amendment of that petition, as well as an evidentiary hearing or, more likely, a stay to allow exhaustion of remedies in state court. See

403 Fed. Appx., at 279. The District Court could properly have rejected that motion, consistent with its order precluding further submissions (effectively remitting Clair to state court to pursue the matter). See *Mayle* v. *Felix*, 545 U. S. 644, 663 (2005). And if that is so, the court also acted within its discretion in denying Clair's request to substitute counsel, even without the usually appropriate inquiry. The court was not required to appoint a new lawyer just so Clair could file a futile motion. We accordingly find that the Court of Appeals erred in overturning the District Court's decision.[4]

The judgment below is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

--------

[4] We note as well that the Court of Appeals ordered the wrong remedy even assuming the District Court had abused its discretion in denying Clair's substitution motion without inquiry. The way to cure that error would have been to remand to the District Court to decide whether substitution was appropriate at the time of Clair's letter. Unless that court determined that counsel should have been changed, the Court of Appeals had no basis for vacating the denial of Clair's habeas petition.