**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2987
_____

CARL SMITH,
Appellant

v.

SUPERINTENDENT MAHANOY SCI; ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY PHILADELPHIA
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-03066)
District Judge: Honorable Jan E. DuBois
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 5, 2022
_____

Before: CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judge</u>, and PRATTER, <u>District Judge</u>.[*]

(Filed: April 20, 2022)
_____

OPINION[**]
_____

---

[*] Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Carl Smith appeals the order dismissing his habeas petition under 28 U.S.C. § 2254. For the reasons that follow, we will vacate and remand for a hearing on Smith's Sixth Amendment choice of counsel claim.

I

A

1

In 2011, Smith was charged in an eight-count information with murder and weapons offenses. Smith retained private counsel ("retained counsel"), who appeared at both his preliminary hearing and arraignment. After his arraignment, the state trial court appointed counsel ("appointed counsel").

Appointed counsel appeared at pretrial conferences and obtained several continuances for further investigation. On February 1, 2012, the trial court held a scheduling conference and set Smith's trial for March 18, 2013.

2

Five months before trial, in October 2012, Smith contacted the court several times about appointed counsel's performance. On October 9, 2012, Smith sent a letter informing the court that he was "unhappy with the professionalism of [his] court appointed attorney," and believed there was "no hope" of reconciling their differences and requesting new appointed counsel. ECF No. 10 at 471.

The next day, Smith filed a motion to appoint new counsel. In the motion, Smith stated that he viewed appointed counsel as "ineffective" and reiterated that "there is no

hope of reconciliation." ECF No. 10 at 203. Smith also listed specific concerns about appointed counsel, including that counsel allegedly failed to (1) interview certain witnesses, (2) consider an expert witness, (3) obtain a psychiatric evaluation, and (4) meet with Smith. The record does not indicate whether the court addressed the letter or motion, beyond confirming receipt and advising Smith that the court had forwarded a copy to his appointed counsel.[1]

On October 31, 2012, Smith sent another letter to the Court, which mentioned his motion and criticized both appointed counsel and his former retained counsel. In this letter, Smith complained that retained counsel did not advise him of the benefits of a motion to quash the charges and whether he was facing a capital case.[2] As to appointed counsel, Smith expressed frustration that he, rather than counsel, had to petition the court to remove an erroneous designation on his docket regarding a mandatory minimum sentence. He characterized both lawyers as "negligent[ly] handling" his case. ECF No. 10 at 229.

Smith then filed pro se two motions to quash the charges and a motion to compel.

3

On January 30, 2013, Smith sent a final letter to the court, requesting transportation to his February 15, 2013 status hearing. Smith also wrote: "[i]t will also

---

[1] When Smith's family raised the funds to rehire retained counsel, the court may have found it unnecessary to resolve his motion to appoint new counsel. The present record does not, however, establish whether this explains the court's approach.

[2] In November 2012, Smith sent a letter to the prosecutor raising a similar complaint about retained counsel and requesting discovery, a bill of particulars, and the information in his case.

give me an opportunity to meet with my court appointed [counsel], whom I have yet to meet since his appointment to my case." ECF No. 10 at 477. The status hearing was continued to February 19, 2013.

The record concerning the events of February 19, 2013 is murky. The court indicated in a later opinion that retained counsel appeared at the status hearing and advised the court that Smith had retained him again, but a transcript of the proceeding indicates that neither Smith nor retained counsel were in attendance and that the court reported hearing about retained counsel's potential entry into the case from the prosecutor.[3] At some point, retained counsel also informed the court that he would be unable to go forward on the scheduled March 18, 2013 trial date. In a post-trial motion, retained counsel represented that he informed the court he had obligations in a federal criminal matter and that the Commonwealth had no objection to adjourning the trial. In the same motion, retained counsel acknowledged that that while the court "refused to grant a continuance," it would permit him to enter his appearance so long as he would be ready to try the case on the scheduled date. Retained counsel did not enter an appearance.

4

On the first day of trial, both appointed and retained counsel appeared. The court engaged in the following exchange with counsel:

**The Court:** You're ready?

---

[3] The Commonwealth says that the transcript suggests that an off-the-record meeting occurred between the court, the prosecutor, and retained counsel.

> **[Appointed counsel]:** Judge, I'm somewhat ready. To be totally honest with the Court, I've spoken to my client this morning and he still would like to have counsel replaced. The added factors —
>
> **The Court:** Somebody can come in today? The case is ready today. The court officer is now getting the jury. So I don't have any problem, as I explained to [retained counsel] when he first raised this issue a month or so ago, if [retained counsel] is ready and Smith wants to be represented by [retained counsel], fine. Are you ready, [retained counsel]?
>
> **[Retained counsel]:** Judge, as I told the Court before—
>
> **The Court:** Fine enough. Then the answer is no.
>
> **[Retained counsel]:** —I'm not ready.
>
> **The Court:** Okay.
>
> **[Retained counsel]:** Okay. May I be excused?
>
> **The Court:** Yes, Sir.

ECF No. 10 at 480. Appointed counsel represented Smith during the three-day jury trial. The jury found Smith guilty of murder, two firearms offenses, and possessing an instrument of crime. After a brief recess, the court sentenced Smith. Smith addressed the court and stated: "I am a little upset. You know, the fact of the matter is that I did try to hire an attorney that I was comfortable with. For some reason, I wasn't able to get that attorney. [Appointed counsel] didn't do a good job, [and] I don't think it was the best of his ability." ECF No. 10 at 883. The court sentenced Smith to the mandatory sentence of life in prison.

5

After the trial, retained counsel entered his appearance on Smith's behalf and filed post-trial motions. Retained counsel argued, in relevant part, that the trial court erred by failing to allow Smith to be represented by the lawyer of his choosing. The motion was denied. On appeal, Smith filed a motion to remand for an evidentiary hearing on his request for a continuance to allow him to have counsel of choice. The Superior Court

5

denied the motion to remand without prejudice and subsequently affirmed Smith's

judgment, concluding that the record supported the trial court's decision to deny the

continuance. The Supreme Court of Pennsylvania declined review.

B

Smith filed a pro se petition in state court under the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. § 9541 et seq., challenging his convictions on numerous

grounds, though he did not reassert his choice-of-counsel claim. Smith then filed a

habeas petition under 28 U.S.C. § 2254, reasserting his choice-of-counsel argument

among others. The Magistrate Judge recommended that Smith's petition be denied

without an evidentiary hearing. Smith v. DelBalso, No. 19-cv-3066, 2020 WL 5261016,

at *17 (E.D. Pa. Mar. 4, 2020). As to Smith's choice-of-counsel claim, the Magistrate

Judge concluded that the Superior Court did not unreasonably apply federal law when

holding there was no abuse of discretion in denying the continuance. Id. at *10-11. The

District Court overruled Smith's objections to the Magistrate Judge's findings and

recommendations and adopted them. Smith v. DelBalso, No. 19-3066, 2020 WL

5258437, at *1-2 (E.D. Pa. Sept. 3, 2020). Smith sought a certificate of appealability,

which we granted to address whether the state trial court violated his Sixth Amendment

rights when it denied his request for a continuance and prevented him from proceeding to

trial with his counsel of choice.[4]

---

[4] We also granted a certificate of appealability on Smith's related due process
claim, but he presented no due process arguments. A certificate of appealability was not
sought concerning Smith's request for an evidentiary hearing, but we may sua sponte

## II[5]

### A

When a district court dismisses a habeas petition without an evidentiary hearing, our review of its order is plenary. Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009). Because the state court adjudicated Smith's claim on the merits, we apply the same standard of review as the District Court. Blystone v. Horn, 664 F.3d 397, 416-17 (3d Cir. 2011). This typically means that we examine whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

### B

The Sixth Amendment provides criminal defendants the right to counsel of choice. United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006); Powell v. Alabama, 287 U.S. 45, 53 (1932). Because an erroneous deprivation of counsel of choice is a structural error not subject to harmless-error review, a defendant need not demonstrate prejudice resulting from the deprivation. Gonzalez-Lopez, 548 U.S. at 146-47, 150.

The right to counsel of choice, however, is not without limits. For example, a defendant cannot invoke this right to demand a particular lawyer he cannot afford or who declines to represent him. Wheat v. United States, 486 U.S. 153, 159 (1988). A trial court also possesses "wide latitude in balancing the right to counsel of choice against the

___

expand the certificate of appealability if the circumstances of a particular case so require. 3d Cir. L.A.R. 22.1(b); Villot v. Varner, 373 F.3d 327, 337 n.13 (3d Cir. 2004).

[5] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

needs of fairness and against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152 (citations omitted). Although the Supreme Court has not precisely delineated how courts should approach "scheduling and other decisions that effectively exclude a defendant's first choice of counsel," it is clear that the arbitrary denial of a continuance to allow such counsel violates the Sixth Amendment. Id. at 152.

As the Supreme Court observed in Martel v. Clair, "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer." 565 U.S. 648, 664 (2012). While a hearing is not required in all cases, "[i]n the mine run of circumstances," a defendant's request for substitution premised upon dissatisfaction with counsel typically "require[s] the court to make further inquiry before ruling on [a] motion for a new attorney." Id. at 665.[6] The Martel Court explained that an "on-the-record

---

[6] Martel teaches at least two things. First, courts should apply an "interest of justice" standard for motions to replace counsel under 18 U.S.C. § 3559, and consider factors, such as "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." Martel, 565 U.S. at 663. The factors discussed in Martel were derived from noncapital cases and thus may be considered outside of the § 3559 context. Id. at 663. Second, for motions to substitute counsel in general, "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer," though this will not always require a hearing. Id. at 664; see also United States v. Velazquez, 855 F.3d 1021, 1034 (9th Cir. 2017) (observing that frequently, a court cannot properly resolve a substitution motion without probing why a new lawyer is sought, but "[f]ailure to conduct an inquiry is not necessarily an abuse of discretion if the trial court has sufficient information to resolve the motion"); United States v. Jones, 795 F.3d 791, 797 (8th Cir. 2015) (concluding no abuse of discretion in denying request without inquiry because the Defendant's motion "thoroughly explained his reasons for requesting a new lawyer, and the district court had all the information necessary to make a ruling"); but see Peterson v. Smith, 510 F. App'x 356, 366 (6th Cir. 2013) (nonprecedential) (noting that "such inquiry is not required by clearly established Supreme Court precedent").

8

inquiry into the defendant's allegations 'permits meaningful appellate review' of a trial court's exercise of discretion." Id. at 664 (quoting United States v. Taylor, 487 U.S. 326, 336-37 (1988) (alteration omitted)). Thus, where a defendant's request for substitution of counsel could warrant a continuance, the court must determine the defendant's reasons for the request to properly balance the defendant's Sixth Amendment rights against "fairness" and "the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152.

C

Based on the present record, we are unable to determine whether the court considered or probed why Smith wanted to reemploy retained counsel. Smith sent multiple letters expressing concerns about his appointed counsel. He also filed a motion to appoint new counsel. The record, however, is silent as to whether the court addressed the letters or the motion. Moreover, the transcript of the February 19, 2013 status hearing does not reveal Smith's presence or even a discussion about Smith's letters or why Smith sought to change counsel. Furthermore, the record contains contradictory information as to what happened both on and off the record in February 2013 concerning retained counsel's reappearance in the case. Compare ECF No. 39 at 4-5 (Court reporting to appointed counsel that retained counsel had made contact with ADA about possible representation of Defendant), with ECF No. 10 at 89 (Court reporting that it had direct contact with retained counsel at the February 19, 2013 status hearing, which is belied by the transcript), and ECF No. 10 at 102 (retained counsel indicating that he and ADA appeared before the Court "[a]pproximately five (5) weeks prior to trial," and retained counsel communicated that Smith had retained him but he had a scheduling conflict). It

9

is unclear when Smith (directly or through counsel) first communicated his desire to rehire retained counsel to the court and when a request for a continuance was made, if at all. Finally, the Superior Court did not have the February 19, 2013 transcript when it ruled, and we thus cannot say whether it would have impacted its decision. ECF No. 10 at 60-61 On this record, we cannot determine whether the state court's adjudication of Smith's Sixth Amendment claim, including the denial of an evidentiary hearing, resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law.

Because we lack sufficient information concerning whether the court properly balanced the Sixth Amendment right to choose counsel, and "[i]nasmuch as these questions can be decided only after an evidentiary hearing . . . and because the district court did not hold such a hearing, we shall remand the case for this purpose." United States v. Ackerman, 619 F.2d 285, 288 (3d Cir. 1980) (per curiam); but see Martel, 565 U.S. at 666 n.4 (observing that vacating denial of habeas petition was "wrong remedy," but that remand would be appropriate to decide whether substitution was appropriate).[7]

III

_____

[7] To prevail on his habeas petition, Smith bears the burden of demonstrating that the state court's decision was "'contrary to' federal law then clearly established in the holdings of [the Supreme] Court," "'involved an unreasonable application of' such law," or "'was based on an unreasonable determination of the facts' in light of the record before the state court." Harrington v. Richter, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1), (2)). Nothing herein constitutes a ruling concerning whether he has carried this burden.

For the foregoing reasons, we will vacate the District Court's order on only Smith's Sixth Amendment choice-of-counsel claim and remand for a hearing on this claim.