# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 31, 2023

Lyle W. Cayce
Clerk

————————

No. 22-70002

————————

MILTON DWAYNE GOBERT,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-42

———————————————————————

Before JONES, DENNIS, and GRAVES, *Circuit Judges*.

JAMES E. GRAVES, JR., *Circuit Judge*:[*]

Petitioner Milton Dwayne Gobert seeks a certificate of appealability (COA) to appeal the district court's denial of his federal habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges the district court's denial of his motions to appoint substitute counsel. Because Gobert has failed to satisfy

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

the standards for the issuance of a COA, and has not pointed to an abuse of discretion, we deny his request and dismiss the matter.

During the mid-2000s, a Texas state jury found Gobert guilty of capital murder of Mel Cotton, a friend of his then girlfriend. He was sentenced to death. *Gobert v. State*, No. AP-76,345, 2011 WL 5881601, at *3 (Tex. Crim. App. Nov. 23, 2011). Following the denial of his request for post-conviction relief by the state courts, Gobert filed a § 2254 petition, wherein he asserted multiple claims of ineffective assistance of trial counsel during both the guilt/innocence and punishment phases of his trial. The district court, in a well-reasoned opinion, declined to grant relief and denied a COA.

The granting of a COA is a jurisdictional prerequisite to Gobert's appeal from the denial of his § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To be entitled to a COA, Gobert must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To make the requisite showing, he must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quotations omitted) (citation omitted).

Gobert seeks a COA on his claims that his trial counsel was ineffective by: (A) failing to thoroughly investigate Tasha Lass prior to calling her as a witness and (B) failing to investigate and present compelling mitigation evidence.

To prevail on a claim of ineffective assistance of counsel, Gobert must establish two key elements: (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls "below an objective standard of reasonableness." *See id.* at 688. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action might have been considered sound trial strategy." *Id.* (internal quotation marks omitted). However, this "does not eliminate counsel's duty to 'make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Escamilla v. Stephens*, 749 F.3d 380, 388 (5th Cir. 2014) (citing *Strickland*, 466 U.S. at 690–91). To satisfy the prejudice prong of an ineffective assistance of counsel claim, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A. Failure to Investigate Tasha Lass

First, Gobert argues that his trial counsel was ineffective for not thoroughly investigating Travis County Deputy Tasha Lass prior to calling her as a witness during the guilt/innocence phase. Lass provided brief testimony for the defense, highlighting the lack of privacy in jail cells and suggesting that Gobert's cellmate may have learned details about the murder from reading case files rather than hearing a confession from Gobert. However, during the punishment phase, Lass testified for the State about her inappropriate relationship with Gobert, smuggling him a cell phone, and his attempt to involve her in an escape plan. Gobert contends that had his counsel conducted a proper investigation, they could have anticipated the risk of calling Lass as a witness and prevented her damaging testimony.

Gobert's argument lacks force. This hindsight argument that counsel should have investigated Lass is utterly unconvincing, as there was no indication of an illicit relationship between the two at the time of Lass's guilt/innocence testimony. It was Gobert *himself* who failed to disclose his relationship with Lass to counsel and who insisted on calling her as a witness. Our cases have established a steadfast principle—a defendant cannot direct

their legal counsel to pursue a specific strategy and subsequently accuse them of providing inadequate representation for adhering to those instructions. *United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990) ("[A defendant cannot] avoid conviction on the ground that his lawyer did exactly what he asked him to do."); *Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984) ("By no measure can [a defendant] block his lawyer's efforts and later claim the resulting performance was constitutionally deficient."); *see also Nixon v. Epps*, 405 F.3d 318, 325–26 (5th Cir. 2005) (finding that counsel was not ineffective for failing to present additional mitigating evidence over client's objection). Thus, his claim is meritless.

Even if counsel had investigated Lass, Gobert has not proven that he was prejudiced. As observed by the district court, a significant body of evidence was presented to the jury regarding his propensity for future dangerousness, which included the killing of Mel Cotton and his lifelong inclination towards violence and incapacity to manage his anger. Thus, in cases such as this where "the evidence of [ ] future dangerousness was overwhelming . . . it is virtually impossible to establish prejudice." *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 698).

Therefore, the district court was correct in concluding that Gobert failed to establish either prong of the *Strickland* inquiry. Reasonable jurists could not disagree with the court's resolution of this issue.

### B. Failure to Investigate and Present Mitigating Evidence

Gobert's next argument fares no better. He argues that his trial counsel rendered ineffective assistance by failing to interview or present several family members and teachers who could have testified about his emotional difficulties and lack of impulse control during his school years, which were caused by a childhood accident where he was hit by a car.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of

No. 22-70002

trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial.").

In this case, the district court concluded that Gobert's claim failed because he did not establish that his proposed witnesses testimony would have been favorable. We agree. Reasonable jurists could not debate whether failure to present this testimony was deficient or prejudicial.

It is well-settled that any ineffective assistance claim "must falter where the evidence to be discovered is so similar and cumulative that failure to find and present it would not prejudice the result." *See Skinner v. Quarterman*, 528 F.3d 336, 345 n.11 (5th Cir. 2008) (citing *Strickland*, 466 U.S. at 694). As the district court noted, much of the information provided in the affidavits produced by the potential witnesses is not new and is similar to what was presented at trial. The mistreatment that Gobert's mother endured while she was pregnant with him, the physical abuse he received from his mother, and the physical confrontations he had with bullies in his neighborhood during his childhood were extensively discussed during the trial. Any additional testimony would have been redundant as the origins of his aggressive tendencies had already been established. As a result, Gobert has not shown counsel's performance was deficient.

No. 22-70002

Even if counsel was deficient in not investigating further, Gobert fails to demonstrate prejudice under the second prong of *Strickland*. As stated above, it is "virtually impossible" to establish prejudice in cases where the evidence of future dangerousness is overwhelming. *Ladd*, 311 F.3d at 360. No reasonable jurist would conclude otherwise.

### C. Motions for Substitute Counsel[1]

With respect to Gobert's remaining claim—that the district court erred in denying his motions for the appointment of new supplemental counsel—we conclude that it also fails. Gobert contends that the district court: (1) applied the wrong standard to his requests for new counsel; (2) failed to conduct a timely fact-specific inquiry into his complaint; and (3) based its order on erroneous facts. However, these arguments are unavailing.

When a habeas petitioner in a capital case moves for substitute counsel, a district court must decide the motion "in the interests of justice." *Martel v. Clair*, 565 U.S. 648, 658 (2012) (internal quotation marks omitted). That standard "contemplates a peculiarly context-specific inquiry." *Id.* at 663. Because the decision whether to substitute counsel "is so fact-specific," a district court's disposition of a substitution motion "deserves deference," and "a reviewing court may overturn it only for an abuse of discretion." *Id.* at 664. Among the factors a reviewing court may consider are "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint." *Id.* at 663.

―――――――――――――――

[1] Confronted with a similar request to appeal a denial of substitute counsel, this court recently held, in an unpublished, non-precedential opinion, that resolving the question of counsel substitution would be meaningless unless this court also granted relief on the underlying denial of COA in the petitioner's § 2254 case. *See Gamboa v. Lumpkin*, 16-70023, 2023 WL 2536345 (5th Cir. Mar. 16, 2023) (unpublished). Refusing to take the latter step, this court denied the substitution appeal as moot. The same disposition would be appropriate in this case, but in any event, as shown above, petitioner's request for new habeas counsel is meritless.

A district court may deny a motion to substitute counsel "even without the usually appropriate inquiry" where the claims a petitioner seeks to pursue with the help of new counsel are futile. *Id.* at 666.

In order to prevail, Gobert must establish that the district court based its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *See United States v. Ebron*, 683 F.3d 105, 126 (5th Cir. 2012). He cannot do so.

*First*, Gobert claims that the district court applied the wrong legal standard by using a "good cause" standard instead of the "interests-of-justice" standard that applies to indigent capital petitioners. However, this argument fails for two reasons. First, this assertion is contradicted by the record as, the petitioner concedes, the district court cited the appropriate standard. Second, Gobert's assertion that the standard announced in *Martel v. Clair*, 565 U.S. 648 (2012) differs from the standard for substitution requests arising during noncapital proceedings is incorrect. Indeed, in *Clair*, the U.S. Supreme Court explicitly stated that the standard of interests-of-justice that governs motions for new counsel in capital habeas proceedings under 18 U.S.C. § 3599 is identical to the standard that governs motions for new counsel in noncapital cases. *Clair*, 565 U.S. at 658 ("Clair argues, and the Ninth Circuit agreed, that district courts should decide substitution motions brought under § 3599 "in the interests of justice." That standard derives from 18 U.S.C. § 3006A, which governs the appointment and substitution of counsel in federal *non*-capital litigation . . . . On this matter, we think Clair, not the State, gets it right." (emphasis added)).

Thus, the district court correctly identified the interests-of-justice standard as controlling and looked to this court's precedent applying the interest-of-justice standard for substitution of counsel to identify common circumstances in which good cause might exist for granting such a substitution. We find no abuse of discretion here.

*Second*, Gobert argues that the district court did not adequately inquire into his reasons for wanting new counsel. The Supreme Court has stated that district court's must probe into why the defendant wants a new attorney. *Clair*, 565 U.S. at 664. However, the record shows that the district court had sufficient information to make a well-informed decision regarding Gobert's case. This information included Gobert's request to be heard and letters detailing allegations that were not raised by his legal counsel and expressing discontent with minor deficiencies in his federal petition. Hence, the district court had more than enough information about why Gobert wanted new counsel and concluded that he was merely "unhappy with the work of his current federal habeas counsel." Therefore, this argument fails.

*Third*, Gobert contends that the lower court made a factual error by concluding that he only made general assertions in his motions for substitution. However, Gobert has misinterpreted the district court's decision, as it did not state that he never made any specific claims. Instead, it determined that Gobert had not presented proof of a serious conflict or breakdown in communication, and that he only expressed general objections to certain aspects of the federal petition that his counsel filed. The record supports the district court's conclusion. Thus, we cannot say that the district court abused its discretion in denying Gobert's motions to substitute counsel.

Accordingly, the request for a COA is DENIED and the appeal is DISMISSED. The district court's denial of substitute counsel is AFFIRMED.