# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Brisco, 2012 IL App (1st) 101612**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORNELL BRISCO, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-1612 |
| Filed | March 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction and sentence for aggravated unlawful use of a weapon, the appellate court vacated defendant's sentence and remanded the cause for new posttrial proceedings and, if necessary, sentencing, including sentencing to a three-year period of mandatory supervised release, if defendant's conviction is upheld on remand, since the trial court erred in denying defendant's motion to substitute counsel for posttrial proceedings unless defendant's chosen counsel could prepare for sentencing and posttrial motions within two weeks, especially when the trial court made no finding that defendant's request for new counsel was dilatory or lacking in good faith, counsel was in court and ready to file an appearance, the trial had concluded only one month earlier, defendant was incarcerated, and the delay in obtaining new counsel did not reflect a lack of diligence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-17970; the Hon. John J. Moran, Judge, presiding. |
| Judgment | Judgment affirmed; sentence vacated and remanded. |

Counsel on Appeal   Michael J. Pelletier, Alan D. Goldberg, and Alison L.S. Shah, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Jon Walters, Assistant State's Attorneys, of counsel), for the People.

Panel   JUSTICE STERBA delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1   Defendant Cornell Brisco was charged by information with four counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2008)) and two counts of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)). Following a bench trial, defendant was convicted on all counts and sentenced to 11 years in prison on the first count of aggravated unlawful use of a weapon (AUUW). On appeal, defendant contends that the State failed to prove him guilty of AUUW beyond a reasonable doubt where the statute under which he was charged had been amended at the time the crime was committed and where defendant fell under the invitee exception to the amended statute. Alternatively, defendant contends that the trial judge was not a neutral arbiter where the judge referenced defendant's eligibility for a Class X sentence in response to defendant's questions. Defendant also contends he received ineffective assistance of counsel where his attorney failed to bring pretrial motions to quash arrest and suppress evidence and was denied his right to counsel of his choice when the trial court required his chosen attorney for posttrial proceedings to become familiar with the case within two weeks as a condition of approving the motion for substitution. Next, defendant contends the trial court's imposition of an 11-year sentence was excessive in light of the character of defendant's prior offenses and his attempts at rehabilitation. Defendant also contends the statute for AUUW is unconstitutional under the second amendment. Finally, defendant contends that the trial court erred in imposing a three-year term of mandatory supervised release (MSR) attaching to Class X felonies when defendant was found guilty of a Class 2 offense, which attaches only a two-year term of MSR. For the reasons that follow, we affirm the judgment of the trial court, but vacate the sentence and remand for new posttrial proceedings.

¶ 2                                BACKGROUND

¶ 3   This case arises out of events occurring on September 22, 2009, when defendant was arrested in the basement apartment of 1545 North Lorel Avenue in Chicago, Illinois.

-2-

Defendant was charged with four counts of AUUW and two counts of unlawful use of a weapon by a felon. Specifically, count I of the information charged defendant with AUUW, alleging defendant: "knowingly carried on or about his person, a firearm, at a time when he was not on his own land or in his own abode or fixed place of business and the firearm possessed was uncased, loaded, and immediately accessible at the time of offense, and he had been previously convicted of a felony."

¶ 4    In November 2009, a conference pursuant to Illinois Supreme Court Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 1997)) was held, and defendant was offered a seven-year sentence in exchange for a guilty plea. At a hearing held several months later, defendant inquired through counsel why he was eligible for Class X sentencing. The trial court responded that defendant was Class X because of his background, which included prior Class 2 felonies. The court recounted defendant's 2002 conviction for harassing a juror or witness, his 2004 conviction for delivery of a controlled substance, and also referred to a charge of possession of a controlled substance. At that point, the State interjected, saying "Judge, I don't have this as a Class X." The trial court responded that it was basing its recollection on what was indicated at the Rule 402 conference, but then checked the charging instrument. There, it found that because the State had not used the 2007 possession of a controlled substance conviction to enhance the current charge, but instead used the 2002 harassment conviction, defendant could not be subject to Class X sentencing.

¶ 5    After the case was passed to allow the parties to reenter a conference, defendant was again offered seven years, this time under Class 2 sentencing, which ranges from a minimum of 3 to a maximum of 14 years. The trial court cautioned defendant that if he chose not to accept this offer, there was a risk the State would cure the "deficiency" in the charging document, resulting in Class X sentencing. Defendant rejected the offer of seven years, whereupon the State sought leave to amend the charging instruments to comport with the preliminary hearing transcript, which indicated defendant was convicted of possession of a controlled substance. The court granted the State's motion to amend over defendant's objection.

¶ 6    The State's evidence at trial established that on September 22, 2009, at around midnight, Chicago police officer Vince Stinar and his partner were driving in an unmarked vehicle in the area of 1545 North Lorel Avenue when they saw two men in the street near the mouth of an alley. One man was on a bicycle with his hands in the air, while another man, later identified as defendant, stood five feet away, facing the man on the bike.

¶ 7    Officer Stinar testified at trial that while he was driving toward the men's location, defendant looked in the direction of the officer's vehicle and ran into a side entrance of an immediately adjacent building. As Officer Stinar pursued defendant into the building, he noticed a large object in defendant's hands. Once inside the building's first-floor apartment, Officer Stinar saw defendant drop a rifle while running through the building and out the door. Officer Stinar recovered the rifle and placed it in the trunk of the police vehicle, while his partner observed defendant return to the building and proceed to the basement. After backup units arrived to assist, Officer Stinar entered the basement and found defendant hiding behind a stack of boxes and placed him under arrest.

¶ 8        Defendant testified that on the evening of September 22, 2009, he was sleeping in his friend Gregory's basement apartment at 1545 North Lorel Avenue. According to defendant, he had known Gregory for several years, though he did not know his last name. Defendant testified he first saw the police when they woke him out of his sleep, handcuffed him, and dragged him out of the apartment. Defendant denied having a rifle at any time during the night of his arrest.

¶ 9        The court found defendant guilty on all counts and continued the matter for further proceedings. One month after trial, on June 2, 2010, when the case was first up for posttrial motions and sentencing, counsel Irving Federman requested leave to enter an appearance for defendant for the purpose of posttrial motions. Federman requested time to supplement the pending motion for a new trial filed by defendant's court-appointed attorney and to review the transcript. The court immediately denied the motion, but then held a discussion off the record. Back on the record, the court revealed the results of a scheduling conference with Federman, stating that Federman was scheduled for surgery on June 21, and the court would be retiring effective July 1. Therefore, the court offered Federman the opportunity to appear if he could be ready by June 15, but noted the impossibility of obtaining a trial transcript by that date. Federman ultimately asked for leave to withdraw his appearance and the case was continued for the following day.

¶ 10       The next day, the court denied defendant's motion for a new trial and heard from defendant at the sentencing hearing. Defendant stated he had received a certificate in janitor and correction maintenance during his prior incarceration. Arguing further in mitigation, defendant pointed out he had not fathered any children and had several extended-family members visiting him regularly. The trial court imposed a sentence of 11 years with a 3-year term of MSR. Defendant filed a motion to reconsider the sentence, which the trial court denied. Defendant timely filed this appeal.

¶ 11                                              ANALYSIS
¶ 12                                  A. Guilt Beyond Reasonable Doubt
¶ 13       Defendant first contends that he was charged and convicted on counts I and II under an earlier version of the AUUW statute that had been amended by the time of his offense. As this issue was not raised either at trial or in a posttrial motion, we review for plain error. See *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009). This doctrine allows a reviewing court to consider otherwise unpreserved issues on appeal if the evidence is closely balanced or the error so seriously affects the integrity of the judicial process that it denies the defendant his right to a fair trial. *People v. Santiago*, 409 Ill. App. 3d 927, 930-31 (2011). Defendant argues this error affected his substantial rights, namely, the prohibition on convicting a defendant for a crime that does not exist. See *People v. Wasson*, 175 Ill. App. 3d 851, 854 (1988). Before turning to the merits of this contention, we must first determine whether an error occurred.

¶ 14       Where the sufficiency of a charging instrument is attacked for the first time on appeal, we must review the indictment or information to ascertain if it apprised the defendant of the offense charged with sufficient specificity to: (1) allow preparation of his defense; and (2)

allow pleading a resulting conviction or acquittal as a bar to future prosecution. *People v. DiLorenzo*, 169 Ill. 2d 318, 322 (1996); see also *People v. Gutierrez*, 402 Ill. App. 3d 866, 890 (2010). "Thus, the question is whether, in light of the facts of record, the indictment was so imprecise as to prejudice defendant's ability to prepare a defense." *People v. Phillips*, 215 Ill. 2d 554, 562 (2005).

¶ 15    Here, counts I and II of the information charged defendant under unamended section 24-1.6(a)(1) of the Criminal Code of 1961, defining the offense of AUUW and providing, in relevant part, that a person commits the offense of AUUW when he or she knowingly:

> "(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm[.]" 720 ILCS 5/24-1.6(a)(1) (West 2008).

The amended statute, which went into effect on August 25, 2009, one month before the crime was committed, mirrors the first portion of the original statute but adds the phrase "or on the land or in the legal dwelling of another person as an invitee with that person's permission" to the exception clause. 720 ILCS 5/24-1.6(a)(1) (West 2010).

¶ 16    It is readily apparent that counts I and II of the information omit any mention of defendant's status, or lack thereof, as an invitee, which is a necessary element of the offense of AUUW after August 25, 2009. While elements missing from one count of a multiple-count indictment may be supplied by other counts (*People v. Morris*, 135 Ill. 2d 540, 544 (1990)), no other counts of the information properly allege this element. Instead, counts III and IV, also charging AUUW, allege defendant knowingly possessed a firearm "at a time when he was not on his own land, or in his own abode or fixed place of business and when he was not an invitee thereon *for the purpose of display of such weapon or the lawful commerce in weapons.*" (Emphasis added.) The element of being an invitee on the land of another is distinct from the element of being an invitee on one's own land, abode, or fixed place of business for the specific purpose of displaying a weapon or engaging in weapons commerce, which was set forth in counts III and IV.

¶ 17    Although this omission in counts I and II clearly rendered the information imprecise, defendant cannot show it prejudiced his ability to prepare a defense. Indeed, defendant makes no attempt to show prejudice, instead arguing that such a showing is unnecessary because the offense with which he was charged did not exist. However, the case defendant cites for this proposition, *People v. Tellez-Valencia*, 188 Ill. 2d 523, 527 (1999), is inapposite. There, the statute under which the defendants were charged and convicted was held unconstitutional while their appeals were pending. *Id.* at 524. Accordingly, the offense was void *ab initio* and the indictment contained a fatal, substantive defect, which hindered preparation of the defense. See *id.* at 526-27; see also *Wasson*, 175 Ill. App. 3d at 854-55 (where the defendant was "forced to answer to crimes for which he could not have been lawfully convicted" he could not adequately prepare a defense).

¶ 18    Here, in contrast, the offense of AUUW was in existence before, during and after the time defendant committed the crime, but in a somewhat different form. Defendant has failed to show how the indictment's failure to negate an exception contained in the amendment

hindered his ability to mount an effective defense. Specifically, because defendant testified he never had a rifle the night he was arrested, he was not prejudiced by a failure to gather evidence countering any argument by the State that he did not possess the rifle as an invitee on the land of another. See *People v. Davis*, 82 Ill. 2d 534, 539 (1980) (the defendant was not prejudiced by indictment's misidentification of the person whom he made threats against, as his defense was that he never made threats); *People v. Gudgel*, 183 Ill. App. 3d 881, 884 (1989) (where indictment misidentified from whom the defendant received notice to leave premises, the defendant was not prejudiced because his defense was that he was never told to leave by anyone).

¶ 19 *People v. Grant*, 57 Ill. 2d 264, 269 (1974), is also instructive. There, the defendant, charged with unlawful use of a weapon, challenged the complaint's failure to allege that at the time he had the weapon, he was not in his own abode, a necessary element of the crime. *Id.* The reviewing court did not find the defendant suffered prejudice from this omission because the defendant's testimony belied his contention that he was not aware the State had to prove he was not in his own abode. *Id.* The defendant testified he resided in the place where he was arrested and provided an explanation as to why he had given a different address at the time of his arrest. *Id.*

¶ 20 Similarly, here, defendant's own testimony suggests he was aware the State needed to prove he was not an invitee. Defendant repeatedly testified that he was on the premises as an overnight guest of his friend. In particular, he provided details as to the time he arrived, his reason for spending the night, and the duration of the friendship. It follows that defendant could not have been prejudiced by the failure of the indictment to specifically allege that he was not an invitee at the time he possessed the rifle, and this is not grounds for reversal of defendant's conviction.

¶ 21 In the alternative, defendant contends he was not proven guilty beyond a reasonable doubt where the State failed to introduce evidence he was not an invitee on the premises of 1545 North Lorel Avenue. A challenge to the sufficiency of the evidence does not permit the reviewing court to retry the defendant, but instead requires the court to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime to be proven beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

¶ 22 The State acknowledges it was required to prove defendant was not an invitee as an element of the offense of aggravated unlawful use of a weapon (*cf. People v. Price*, 375 Ill. App. 3d 684, 687 (2007)), but argues it has met its burden. We agree. Viewed in the light most favorable to the State, there was some evidence that, if believed by a rational finder of fact, could support the conclusion that defendant was not an invitee on the premises where he possessed the rifle. Specifically, Officer Stinar's testimony at trial, which the court found credible, revealed that after he observed defendant standing in front of a man on a bicycle with his hands in the air, he saw defendant run into an adjacent building carrying a large object in his hands. As he chased defendant into the building, Officer Stinar testified he saw defendant drop a rifle. It was reasonable for the trier of fact to conclude that the "large object" in defendant's hands outside the building was the rifle he dropped moments later inside the first-floor apartment. Because defendant possessed the rifle while on a public

street, the trial court could legitimately conclude he was not an invitee falling within the exception to the amended AUUW statute. Likewise, the court reasonably found Officer Stinar's testimony that defendant was discovered crouched behind boxes in a basement apartment inconsistent with and more credible than defendant's claim he was on the premises as an invited guest. This conclusion is further bolstered by defendant's own testimony that he did not know the last name of his friend of over two years with whom he was staying that evening. Taken together, we conclude the evidence reasonably supports a finding that defendant was not an invitee on the premises when he possessed the rifle.

¶ 23                                    B. Trial Court Bias

¶ 24        Defendant next contends that the trial court did not act as a neutral arbiter when it explained how defendant could have been subject to Class X sentencing at a hearing in the presence of the prosecution. The exchange which defendant complains of begins as follows:

"MS. BURAN [Defense Attorney]: Judge, the conference on November 18th the offer was seven. Mr. Briscoe would like the Court to explain–I know the Court has explained before–why he is a Class X. He believes he only is three to 14. I know the Court has explained to him before that it's because of his background.

THE COURT: For the last time, in 2002 harassing a juror or witness was finding of guilty, boot camp followed by 42 months IDOC. That's a class two felony. Then in 2004, delivery of controlled substance, you received probation. That was a class two felony. This is charged as a class two felony. What about the PCS? There was a PCS. Let me double check the year of the indictment.

MS. BROWN [Assistant State's Attorney]: Judge, I don't have this as Class X.

THE COURT: *That is what was indicated at the conference.* Checking the charging document, it could be if the State had used the '07 PCS to enhance the gun charge, but since they used the '02 case, then in that case if it remains as it is, that would be a double enhancement, in which case he is only extendable, not X-able." (Emphasis added.)

The case was then passed for reconference at defendant's request, and when the court reconvened, it cautioned defendant that if he refused to accept the seven years now offered under Class 2 sentencing, he ran the risk the State would "cure the deficiency" of the charging document and charge him as Class X. Subsequently, the State moved to do exactly that, stating that a review of the preliminary hearing transcript revealed the charging instrument before the court did not comport with the preliminary hearing, which indicated defendant was convicted in 2007 of possession of a controlled substance. The court granted the State's motion to "amend the charging instrument to conform with the preliminary hearing testimony" over defendant's objection.

¶ 25        Later during the hearing, when defendant directly queried the court as to why the sentence he was facing had changed, the court answered:

"I explained to you why it was that there was that confusion. I was confused also until I looked at the charging document. Then I explained to you what happened. I heard your attorney *** that the charge in the charging document, an offense that was already–your

-7-

first one, the harassment of a witness, but based on that it would not have been X-able because they already used a class two against you. They can't use it twice. That's double enhancement. That's why there was that confusion. That's why we re-conferenced it. Then when you rejected that, the State then cured the defect by saying they did use the possession of controlled substance at the preliminary hearing and there was a typographical error in the preparation of the charging document and we want to amend that to conform with what was actually the evidence at the preliminary hearing, and that's exactly what I said to you that they might do if you decided to go to trial, that they would cure that defect, and that's exactly what they did."

¶ 26    As an initial matter, defendant concedes he did not raise an objection to the trial judge's statements either during the hearing or in posttrial motions, which ordinarily forfeits appellate review. See *McLaurin*, 235 Ill. 2d at 485. While we may relax the forfeiture rule where the basis for the objection is the trial judge's conduct (*People v. Kliner*, 185 Ill. 2d 81, 161 (1998)), we decline to do so here.

¶ 27    The reasoning behind relaxing the forfeiture doctrine in cases of judicial misconduct was first articulated in *People v. Sprinkle*, 27 Ill. 2d 398, 400 (1963), where the supreme court explained the potential embarrassment trial lawyers may face when objecting to a judge's conduct in the presence of a jury. The *Sprinkle* principle has since been expanded to include situations where no jury is present, but where it nevertheless appears objecting would have been futile. See *People v. Davis*, 378 Ill. App. 3d 1, 10 (2007). However, the supreme court recently stressed the importance of requiring trial counsel to raise contemporaneous objections in order to conserve time and judicial resources, and cautioned that the failure to do so "can be excused only under extraordinary circumstances, such as when a trial judge makes inappropriate remarks to a jury [citation] or relies on social commentary, rather than evidence, in sentencing a defendant to death [citation]." *McLaurin*, 235 Ill. 2d at 488.

¶ 28    The conduct in the case *sub judice* falls far short of the "extraordinary circumstances" required to relax the forfeiture rule. The trial judge responded to defendant's question as to why he was Class X by recounting defendant's prior history aloud. Upon an interruption by the State that "they did not have this as Class X," the court explained that the misunderstanding arose based on a representation made at the Rule 402 conference and went on to state that while defendant's prior history made him Class X eligible, the charging instrument did not in fact reflect this. Not only did this exchange take place outside the presence of the jury, but defendant does not point to any evidence in the record that an attempt to object at that point would have "fallen on deaf ears," a necessary precondition to application of the *Sprinkle* rule. See *Davis*, 378 Ill. App. 3d at 10.

¶ 29    Because we find these circumstances do not necessitate relaxation of the waiver rule, we next consider defendant's contention that we should view his claim of judicial bias as plain error. Defendant argues only the second prong of the plain error doctrine is implicated here, contending that bias on the part of the trial judge interfered with his right to due process of law. See *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). In order to show bias as a basis for reversal, defendant has the burden of demonstrating the existence of active personal animosity, hostility, ill will or distrust toward him. *People v. Shelton*, 401 Ill. App. 3d 564, 583 (2010). No such showing has been made here.

¶ 30      Viewed in context, the court's statements do not show bias but instead reflect the court's attempt, prompted by defendant's questions, to reconcile the representations made at the conference and during the preliminary hearing with the allegations in the charging document. The fact that these statements alerted the State to the error in the charging document was an unintended consequence and cannot be said to be a product of personal hostility toward defendant. Moreover, the fact that the court took the time to provide two detailed explanations to defendant as to why the sentencing parameters had changed is further evidence that the court bore defendant no ill will.

¶ 31      Nor do we find any evidence the judge assumed the role of an advocate, as this court found in *People v. Kuntz*, 239 Ill. App. 3d 587 (1993), cited by defendant. There, the trial judge "prompted the State to seek a continuance and present additional evidence." *Id.* at 592. In contrast, the trial judge here did not urge the State to seek Class X sentencing, but pointed out an inconsistency between the charging document and what was brought forth at the preliminary hearing and Rule 402 conference. This was not an attempt to increase defendant's sentence, but a good-faith effort to mitigate the court's own confusion and respond to defendant's request for clarification. Because no bias is apparent, there is no error that would result in reversal of defendant's conviction.

¶ 32                                 C. Ineffective Assistance of Counsel

¶ 33      Defendant additionally contends he was denied his right to effective assistance of counsel when his trial attorney failed to file a motion to quash his arrest and suppress evidence of the rifle. The two-pronged test to establish ineffective assistance of counsel sets a high standard. *People v. Baines*, 399 Ill. App. 3d 881, 887 (2010). Defendant must demonstrate that his representation was so unprofessional as to fall below an objective standard of reasonableness and that he was prejudiced by his counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Though both prongs of this test must be satisfied in order for defendant to prevail on his claim, a reviewing court has the option of beginning its analysis under either prong, and if it finds the standard for that prong is not satisfied, it need not consider the remaining prong. *People v. Irvine*, 379 Ill. App. 3d 116, 129-30 (2008). Where an ineffective assistance claim is based on defense counsel's failure to file a motion to quash and suppress, to prove prejudice, defendant must show there was a reasonable probability the motion would have been granted and the outcome of trial would have been different had the evidence been suppressed. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). The decision of whether to file a motion to suppress is often one of trial strategy, which "seldom [has] any bearing on issues of incompetency of counsel." *People v. Mendez*, 221 Ill. App. 3d 868, 873 (1991).

¶ 34      Here, defendant argues Officer Stinar's warrantless entry into the residence was not justified under the fourth amendment and a motion to quash arrest and suppress the rifle recovered from the entry should have been filed on that basis. Initially, the State counters that defendant lacked standing to object to the search. It is well settled that a defendant must have a "legitimate expectation of privacy" in the area searched in order to object to the search. (Internal quotation marks omitted.) *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

Defendant cites his testimony that he was an overnight guest in his friend's basement apartment as evidence of his privacy interest in that apartment (see *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990)), but the majority of the evidence contradicts this testimony. Defendant admitted he did not know his friend's last name, despite knowing him for two years. Additionally, Officer Stinar testified his partner only saw defendant enter the basement apartment after fleeing from the scene. Later, Officer Stinar found defendant hiding behind boxes in the basement, which was being rehabbed. Based on the trial court's finding of guilt, it can be inferred that it found Officer Stinar's account of that night more credible than defendant's. Given this credibility determination, it was not reasonably probable a motion to quash arrest and suppress evidence would have been successful, and defendant's ineffective assistance of counsel claim must fail. See *People v. Lundy*, 334 Ill. App. 3d 819, 831 (2002) (where trial court implicitly found officer's testimony credible in finding the defendant guilty, a motion to quash arrest based on the "unbelievability" of officer's testimony would have been futile).

¶ 35    Even assuming *arguendo* it was probable the trial court would have found defendant had standing to challenge this search and seizure, we find a motion to quash the arrest and suppress the evidence would nevertheless have been futile, as there was certainly probable cause to effect the arrest and exigent circumstances justifying the warrantless entry into the residence. Probable cause to arrest exists where facts known to the officer would lead a reasonably cautious person to believe the arrestee had committed a crime. *People v. Wear*, 229 Ill. 2d 545, 563 (2008). While suspicion alone is inadequate to establish probable cause, the evidence relied on by the arresting officer need not prove guilt beyond a reasonable doubt. *People v. Sims*, 192 Ill. 2d 592, 614-15 (2000). A warrantless entry must also be justified by exigent circumstances. *People v. Adams*, 394 Ill. App. 3d 217, 224 (2009). Factors establishing exigent circumstances may include: (1) the commission of a grave or violent offense; (2) the suspect was reasonably believed to be armed; (3) the entry was peaceful; (4) there was a possibility the suspect would escape if not apprehended swiftly; (5) the crime under investigation had been recently committed; and (6) the police had reason to believe the suspect was on the premises. *People v. Morgan*, 388 Ill. App. 3d 252, 270 (2009).

¶ 36    In the case at bar, the testimony of Officer Stinar, credited by the trial court, establishes both probable cause and exigent circumstances justifying the search and seizure. Officer Stinar testified that during a patrol with his partner he saw defendant standing in front of a man on a bicycle who had his hands in the air. The position of the men could have alerted the officers to the possibility a crime was being committed, as raising one's hands in such a manner is a well-known reaction by a victim of a robbery. See, *e.g.*, *People v. Bell*, 209 Ill. App. 3d 438, 442 (1991) (robber ordered victim to "stand against the wall with his hands up"); *People v. Crespo*, 118 Ill. App. 3d 815, 816 (1983) (in armed robbery of tavern, defendant ordered everyone to put their hands up). Though there was no evidence defendant had told the man on the bike to raise his hands, this is a reasonable inference when one considers that the two men were facing each other on an otherwise deserted street at midnight. Further, while Officer Stinar did not see anything in defendant's hands as he faced the man on the bicycle, Officer Stinar explicitly testified he saw a large object in defendant's hands *before* he entered the residence. Standing alone, none of these facts may be sufficient

to show probable cause, but taken together, they establish the reasonable probability defendant committed a crime.

¶ 37    A number of exigent circumstances were also present justifying the officers' entry into the house. First, Officer Stinar reasonably believed defendant was armed, as he saw a large object in defendant's hands moments after witnessing what appeared to be a possible attempted robbery. Also, because defendant was running from the sound of the vehicle, it was possible he would escape if not apprehended. The police certainly had reason to believe defendant was on the premises before their entry, as they observed defendant enter through the side door. Finally, there is no evidence the officers' entry was less than peaceful. Viewed as a whole, these circumstances suggest the entry was lawful, and therefore, a motion to quash and suppress would likely have been unsuccessful. As a result, we reject defendant's claim of ineffective assistance of counsel.

¶ 38                                    D. Motion to Substitute

¶ 39    Defendant further contends the trial court erred in denying his motion to substitute counsel for posttrial proceedings unless defendant's chosen counsel could prepare for sentencing and posttrial motions within two weeks. On June 2, the date scheduled for posttrial motions and sentencing, attorney Irving Federman asked leave to file an appearance for defendant and represent him for purposes of the motion for a new trial. Federman asked for additional time to supplement the motion that had been filed by the public defender. The trial court initially denied his motion, then went off the record for a scheduling conference. When the court reconvened, the following exchange took place:

"THE COURT: The record will reflect that we've had a scheduling conference with Mr. Federman, and the problem is Mr. Federman has a surgery scheduled for June 21st. He's going to be tied up. It's going to a take a while to get a transcript from this trial in any matter, and this Court will not be presiding–will be retired effectively July 1st. I've offered Mr. Federman the opportunity, if he can do everything he needs to do by June 15, I would be happy to allow him to substitute in. Especially the need for a transcript on his part, that's not going to be possible.

MR. FEDERMAN: There was another issue too because I would probably have to do some investigation also in terms of possible witnesses and things of that nature too. That would take some time also.

THE COURT: We'll go ahead with the post-trial motions, if necessary, sentencing. And if you want to represent him on post-conviction proceedings or appellate matters–

MR. FEDERMAN: I'll ask leave to withdraw my appearance at this time though ***."

¶ 40    This colloquy reveals that the court's allowance of a two-week continuance had the practical effect of denying the motion to substitute altogether, as the court recognized the impossibility of obtaining the trial transcript by that date. See, *e.g.*, *People v. Willis*, 6 Ill. App. 3d 980, 981 (1972) (court's refusal to allow defendant's chosen counsel to substitute in on the day of trial unless he could arrive at court within 30 minutes, when counsel resided 175 miles away, amounted to denial of motion to substitute).

-11-

¶ 41    A defendant's sixth amendment right to counsel includes a right to counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006); see also *People v. Ephraim*, 411 Ill. 118, 120 (1952). However, this right is measured against the trial court's interest in trying the case with diligence and the orderly process of judicial administration. *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008). Therefore, the trial court may consider the defendant's reasons for seeking new counsel, whether the request is merely a guise to thwart effective prosecution, whether the defendant has cooperated with current counsel, and the length of time the defendant has been represented by current counsel. *Id.*; see also *People v. Childress*, 276 Ill. App. 3d 402, 411 (1995). A trial court's decision on a motion to substitute is subject to review for an abuse of discretion. *People v. Montgomery*, 373 Ill. App. 3d 1104, 1110 (2007) (quoting *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000)). The trial court does not abuse its discretion in denying a motion if chosen counsel is not specifically identified or does not stand "ready, willing and able" to enter an appearance. *People v. Burrell*, 228 Ill. App. 3d 133, 142 (1992).

¶ 42    The State argues denial was proper because defendant's chosen counsel was not ready or able to enter the case prior to the court's retirement. Initially, the State points to the well-established preference for the judge who presided over trial to decide posttrial motions and impose sentences. However, we note that this preference is limited to situations where the judge remains sitting as a judge on the court. 730 ILCS 5/5-4-1(b) (West 2008). The State cites no case recognizing a trial court's interest in being available to rule on posttrial motions as greater than defendant's right to counsel of his choice, particularly where, as here, the trial court made no finding that defendant's request was dilatory or lacking in good faith.

¶ 43    While we allowed the State leave to cite *Martel v. Clair*, ___ U.S. ___, 132 S. Ct. 1276 (2012), as additional authority, we do not find that case applicable here. The Supreme Court in *Martel* applied the "interests of justice" standard to a *habeus* defendant's motion to replace appointed counsel. *Id.* Under that standard, along with the timeliness of the motion, courts evaluate the defendant's complaints regarding his current appointed counsel, and specifically consider the cause for the complaints and the extent of the breakdown in communication between the lawyer and client. *Id.* at ___, 132 S. Ct. at 1287; see also *United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2005); *United States v. Doe 1*, 272 F.3d 116, 122-23 (2d Cir. 2001). These factors are plainly distinguishable from those we consider where a defendant makes a motion to substitute counsel with his own private attorney. See, *e.g.*, *Tucker*, 382 Ill. App. 3d at 920.

¶ 44    Perhaps more significantly, the facts of *Martel* are also inapposite. There, the defendant made his motion to replace his appointed counsel 10 years into *habeus* proceedings, after the trial court had held an evidentiary hearing, reviewed posttrial briefs, and instructed the parties that no further submissions would be accepted. *Martel*, ___ U.S. at ___, ___, 132 S. Ct. at 1287, 1288. Here, in contrast, defendant moved to substitute counsel when his case was first before the court for posttrial motions. The trial court had neither requested briefing nor heard argument on any motion for posttrial relief. For these reasons, we find *Martel* wholly inapposite from the case at bar.

¶ 45    We turn next to the State's argument that Federman was not ready or able to make an entry into the case due to his upcoming surgery and his resulting need for a continuance.

-12-

However, merely because defendant's chosen counsel requires a continuance to become prepared, it does not follow that counsel is not willing and able to make an entry into the case. We agree with defendant that *Childress* is instructive. There, on the day of trial, private counsel appeared in court asking leave to file an appearance on the defendant's behalf. *Childress*, 276 Ill. App. 3d at 410. Because counsel was unaware trial was scheduled for that day, he requested a continuance. *Id.* The trial court denied counsel's request because all witnesses were present in court and the public defender was prepared to proceed. *Id.* This court reversed, despite the fact that there had been 14 prior continuances, noting specifically that defense counsel was ready, willing, and able to enter an appearance. *Id.* at 413.

¶ 46       Here, the facts are even stronger. Not only was defense counsel present in court and ready to file an appearance, but there is no evidence defendant previously made any motions for continuance. Indeed, June 2 was the first time defendant's case was before the court for posttrial motions. Given that defendant's trial concluded only one month previously, and defendant was incarcerated during this time, the delay in obtaining new counsel did not reflect a lack of diligence on defendant's part. Moreover, unlike the defendant in *Childress*, who gave no reason for seeking private counsel (*Childress*, 276 Ill. App. 3d at 414 (Egan, J., dissenting)), defendant here had previously expressed dissatisfaction with his court-appointed counsel, stating she failed to keep him informed and did not allow him to look at discovery. Nevertheless, he continued to cooperate with her, which is a relevant factor in determining whether a motion to substitute should be granted. See *Tucker*, 382 Ill. App. 3d at 920.

¶ 47       While counsel did request additional time to become prepared, this fact, standing alone, has never been held a sufficient basis to effectively deny a motion to substitute. This is particularly true where the trial court did not even inquire as to the length of time counsel would need. As such, we find this case distinguishable from *United States v. Hughey*, 147 F.3d 423 (5th Cir. 1998), relied upon by the State. There, the court denied defense counsel's request for an indefinite continuance in order to participate in a trial for a different matter. *Id.* at 427. Significantly, in *Hughey*, the need for the continuance was a result of defense counsel's own scheduling errors and decision to take on another matter after having notice of the trial date. *Id.* at 430. In contrast, Federman's need for a continuance was due to the work he had to undertake in order to prepare for the posttrial motion, including locating witnesses and obtaining the trial transcript.

¶ 48       We are mindful that a trial court's discretion in matters of substitution and scheduling should ordinarily not be disturbed, but find the circumstances present in this case necessitate reversal of the court's decision. Accordingly, we vacate defendant's sentence and remand for new posttrial proceedings, and, if necessary, sentencing.

¶ 49       Because we vacate defendant's sentence, we need not consider the argument that the sentence was excessive; however, we will address defendant's remaining two claims of error since the issues may arise upon remand.

¶ 50              E. Constitutionality of Aggravated Unlawful Use of a Weapon Statute

¶ 51       Defendant argues that the AUUW statute that he was convicted under is unconstitutional

in light of the United States Supreme Court's rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010), regarding an individual's second amendment right to bear arms. Whether a statute is constitutional is a question of law to be reviewed *de novo*. *People v. Morgan*, 203 Ill. 2d 470, 486 (2003). Defendant maintains that the AUUW statute is unconstitutional both on its face and as applied to him, given that there is no evidence he possessed the rifle in the apartment for an unlawful purpose. We disagree on both counts.

¶ 52        Our analysis necessarily begins with a discussion of the holdings in *Heller* and *McDonald*. Turning first to *Heller*, there, the Supreme Court struck down a District of Columbia statute imposing a total ban on the possession of handguns in the home, reasoning that the "inherent right of self-defense" lies at the core of the second amendment and the home in particular was where the need for such defense was "most acute." *Heller*, 554 U.S. at 628. Therefore, the Court held this prohibition failed to pass constitutional muster. *Id.* Turning next to *McDonald*, the Court struck down similar Chicago municipal ordinances, holding that the second amendment applied to states through the due process clause of the fourteenth amendment. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3050.

¶ 53        Before considering the impact of these holdings on the AUUW statute, we must first determine the level of scrutiny to apply to our constitutional review. A great number of recent cases have held that intermediate scrutiny, which asks whether the challenged law serves a substantial or important government interest (*People v. Alcozer*, 241 Ill. 2d 248, 262-63 (2011)), is applicable to the various sections of both the AUUW and unlawful use of a weapon by a felon statutes. See, *e.g.*, *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 26; *People v. Ross*, 407 Ill. App. 3d 931 (2011); *People v. Aguilar*, 408 Ill. App. 3d 136, 146 (2011), *appeal allowed*, No. 112116 (Ill. May 25, 2011); *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 74; *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 18. Nevertheless, defendant urges us to apply strict scrutiny, which entails an examination of the law to determine whether it is narrowly tailored to achieve a compelling governmental interest. *Aguilar*, 408 Ill. App. 3d at 144. However, he cites no state or federal cases, and we have found none, in which courts have used this standard to evaluate the constitutionality of laws implicating the second amendment. Indeed, this court specifically rejected the application of strict scrutiny to a constitutional challenge to the AUUW statute since the statue does not severely restrict an individual's right to bear arms. See *Mimes*, 2011 IL App (1st) 082747, ¶ 74. We follow *Mimes* and the above-cited cases and apply intermediate scrutiny.

¶ 54        The provision of the AUUW statute at issue here bars the possession of a firearm by an individual convicted of a felony, except where the individual is on his or her land, abode, fixed place of business or on the land of another as an invitee. 720 ILCS 5/24-1.6(a)(1) (West 2010). The purpose of this statute is to protect the public from the threat posed by convicted felons possessing firearms. *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986); *Spencer*, 2012 IL App (1st) 102094, ¶ 28.

¶ 55        Defendant argues the statute does not pass scrutiny because *Heller* and *McDonald* extend the right to bear arms in self-defense outside the home. We need not determine whether the rather narrow holdings in those cases can be read to encompass a right to bear arms outside the home, as the Supreme Court has explicitly recognized that certain classes of people may

-14-

be disqualified from exercising this right. Specifically, the Supreme Court noted its decision was not meant to "cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626. Indeed, the Court described such provisions as "presumptively valid." *Id.* at 627 n.26. Defendant argues we should not follow this *dicta*. But our supreme court has held that judicial *dicta* should carry dispositive weight in inferior courts. *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 100 (2004); see also *People v. Davis*, 408 Ill. App. 3d 747, 750 (2011).

¶ 56        Accordingly, we conclude that the AUUW statute is constitutionally permissible despite its restrictions on the right of felons to bear arms, as it is a valid exercise of the important governmental interest in protecting the health, safety and general welfare of its citizens. See *Ross*, 407 Ill. App. 3d at 942; *Robinson*, 2011 IL App (1st) 100078, ¶ 26; *Spencer*, 2011 IL App (1st) 102094, ¶ 31. Therefore, defendant's facial challenge to the statute fails on second amendment grounds.

¶ 57        Turning to defendant's "as applied" claim, it is well established that a court is not capable of making an "as applied" determination of a statute's constitutionality where there has been neither an evidentiary hearing nor any findings of fact in the lower court. *Reno v. Flores*, 507 U.S. 292, 300-01 (1993); see also *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 228 (2010). Therefore, we decline to consider defendant's "as applied" challenge to the statute due to the fact that defendant failed to litigate this issue in the trial court.

¶ 58                    F. Validity of Three-Year Mandatory Supervised Release Period

¶ 59        Finally, defendant argues the trial court should have imposed a two-year MSR period instead of a three-year period, because the offense for which he was convicted was a Class 2 felony. We disagree. Because this involves a question of statutory interpretation, our review is *de novo*. *Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 421 (1987).

¶ 60        The law is clear that when a defendant qualifies for Class X sentencing, a three-year period of MSR is necessarily imposed. See, *e.g.*, *People v. Watkins*, 387 Ill. App. 3d 764, 766-67 (2009); *People v. Smart*, 311 Ill. App. 3d 415, 417-18 (2000); *People v. Anderson*, 272 Ill. App. 3d 537, 541 (1995). In *Anderson*, this court explained the reasoning behind imposing a three-year MSR period on an offender who was Class X eligible by background, but not convicted of a Class X offense, stating "the gravity of the conduct offensive to the public safety and welfare, authorizing Class X sentencing, justifiably requires lengthier watchfulness after prison release than violations of a less serious nature." 272 Ill. App. 3d at 541.

¶ 61        Defendant acknowledges these holdings, but argues *People v. Pullen*, 192 Ill. 2d 36 (2000), compels a different result. In *Pullen*, our supreme court considered the consecutive sentencing provision and its application to section 5-5-3(c)(8) of the Unified Code of Corrections, making certain offenders Class X eligible by background. 192 Ill. 2d at 38; 730 ILCS 5/5-5-3(c)(8) (West 2008). The supreme court explained that section 5-5-3(c)(8) requires persons subject to its provisions to be sentenced as Class X offenders, *not* that their offenses are to be treated as Class X felonies for sentencing purposes. *Pullen*, 192 Ill. 2d at 43. Therefore, where the defendant was convicted of two Class 2 felonies, but was sentenced

as a Class X offender, the maximum permissible sentence imposed should have been based on the maximum permissible sentence for two Class 2 felonies, *not* two Class X felonies. *Id.* at 43-44.

¶ 62        Significantly, several cases have examined *Anderson*, *Smart*, and *Watkins* in light of *Pullen* and nevertheless come to the conclusion that a defendant sentenced as a Class X offender due to prior convictions is required to serve the Class X MSR term of three years. See, *e.g.*, *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (2011); *People v. McKinney*, 399 Ill. App. 3d 77, 81-82 (2010); *People v. Lee*, 397 Ill. App. 3d 1067, 1073 (2010). These cases have reasoned, and we agree, that *Pullen* merely "limits the extent to which separate sentences for separate offenses may be served consecutively." *McKinney*, 399 Ill. App. 3d at 83. *Pullen* does not disturb the conclusion that because the MSR term is part of the sentence, an individual subject to Class X sentencing for whatever reason will be subject to the Class X MSR period. *Lee*, 397 Ill. App. 3d at 1073. We decline to depart from these decisions, and hold that imposing a three-year period of MSR would be appropriate if defendant's conviction is upheld on remand.

¶ 63                                          CONCLUSION

¶ 64        For the reasons stated, we affirm the judgment of the trial court, but vacate the sentence and remand for new posttrial proceedings.

¶ 65        Judgment affirmed; sentence vacated and remanded.