# Illinois Official Reports

## Appellate Court

*People v. Burns*, 2013 IL App (1st) 120929

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD BURNS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0929 |
| Filed | December 31, 2013 |
| Rehearing denied | February 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Despite the decision of the Illinois Supreme Court in *Aguilar*, defendant's conviction for aggravated unlawful use of a weapon based on a prior felony conviction was affirmed, since the prohibition on the possession of firearms by a felon has been recognized for many years as conduct that falls outside the protection of the second amendment, and in defendant's case, the aggravated unlawful use of a weapon statute merely regulates the possession of a firearm by a person with a prior felony conviction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-12950; the Hon. Thomas M. Davy, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Adrienne N. River, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People. |
| | |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion. |

## OPINION

¶ 1   Following a bench trial in the circuit court of Cook County, defendant Edward Burns (defendant) was found guilty of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6 (a)(1), (a)(2), (a)(3)(A), (d) (West 2008)) and sentenced to 10 years in prison. Defendant was convicted of a Class 2 offense, based on a prior felony conviction, and sentenced as a Class X offender. On appeal, defendant argues his convictions must be reversed pursuant to the Illinois Supreme Court's decision in *People v. Aguilar*, 2013 IL 112116, *reh'g denied*, No. 112116 (Ill. Dec. 19, 2013), which held the Class 4 form of section 24-1.6 (a)(1), (a)(3)(A), (d) of the AUUW statute facially violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II). *Aguilar*, 2013 IL 112116, ¶ 22. For the following reasons, we affirm defendant's conviction.

¶ 2                                    BACKGROUND

¶ 3   The record on appeal discloses the following facts. On October 7, 2009, defendant was charged by indictment with violating the armed habitual criminal statute (720 ILCS 5/24-1.7(b) (West 2008)), two counts of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1 (West 2008)), and eight counts of AUUW (720 ILCS 5/24-1.6 (West 2008)). The armed habitual criminal charge was based on prior convictions for possession of a controlled substance and AUUW. The UUWF charges were based on the prior AUUW conviction. Four of the AUUW charges refer to the prior AUUW conviction, while the four remaining AUUW charges refer to the prior conviction for possession of a controlled substance. On November 28, 2011, immediately prior to the commencement of the trial, the State moved to dismiss counts V, VII, IX, and XI by *nolle prosequi*. The dismissed counts charged various forms of AUUW on the ground that defendant had not been issued a valid firearms owner identification card.

¶ 4 At trial, Chicago police officer Tim McDonough testified that on June 13, 2009, at approximately 4 a.m., he and Officer Mark Sobczyk were patrolling in a marked police vehicle and responded to a radio report of gunfire in the vicinity of 73rd Street and Blackstone Avenue. While proceeding to that location, the police officers were flagged down by the owner of a black sports utility vehicle, who notified the officers of gunfire and pointed down 73rd Street.

¶ 5 As the police officers approached the intersection of 73rd Street and Blackstone Avenue, Officer McDonough observed three individuals entering a four-door Nissan Maxima facing eastward on 73rd Street. Officer McDonough also noticed a female driver he had not observed entering the vehicle. Officer McDonough parked the police vehicle directly in front of the Nissan.

¶ 6 As Officer McDonough exited his vehicle, he observed the front-seat passenger, whom he identified in court as defendant, exit the Nissan while holding a handgun. Officer McDonough shouted, "Get your hands up," whereupon defendant turned, tossed the handgun into the Nissan, and fled westbound on foot. Officer McDonough chased defendant, who turned southward and threw another object to the ground during the chase. Officer McDonough testified this object was a semiautomatic magazine containing ammunition.

¶ 7 According to Officer McDonough, defendant eventually ran back toward the Nissan. Officer McDonough transmitted this information over his radio. Officer McDonough subsequently learned defendant was apprehended by Officer Sobczyk. When Officer McDonough returned to the location of the Nissan, he observed Officer Hernandez recover the handgun from the floorboard of the passenger seat of the Nissan. Officer McDonough also testified the handgun contained one round of ammunition, but was missing the clip. Officer McDonough further testified the magazine he recovered while chasing defendant fit the handgun recovered from the Nissan.

¶ 8 Officer Sobczyk's testimony was substantially consistent with Officer McDonough's testimony. Officer Sobczyk additionally testified he secured the Nissan and radioed for backup when Officer McDonough pursued defendant. Officer Sobczyk received Officer McDonough's radio call regarding defendant running back toward the Nissan, and Officer Sobczyk started walking toward an alley between Dante and Blackstone Avenues on 73rd Street. Shortly thereafter, defendant emerged from the alley and Officer Sobczyk placed him in custody.

¶ 9 Following the police testimony, the State introduced certified copies of two convictions: one for possession of a controlled substance and one for AUUW. The trial court admitted the convictions without objection. Defendant then moved for a directed finding. The trial court denied the motion.

¶ 10 Tenika Burns (Tenika), defendant's wife, testified that on June 13, 2009, she was driving herself, defendant, Otis Burns (Otis), and Larry Lester to a nightclub. During the drive, Otis received a telephone call, after which he directed Tenika to drive them to 73rd Street and Blackstone Avenue. While parked, a police vehicle parked in front of her vehicle.

¶ 11 According to Tenika, defendant and Lester exited her vehicle, but she did not observe defendant toss a handgun into her vehicle. While one police officer pursued defendant and

Lester, another officer directed her and Otis to exit her vehicle and place their hands on the trunk. Tenika observed a police officer recover a handgun from her vehicle, which Otis identified as belonging to him. She then observed defendant emerge from the alley and police place him into handcuffs and escort him to a police vehicle.

¶ 12    Lester testified in a manner substantially similar to Tenika. Lester additionally testified Otis placed a handgun under the passenger seat when the police parked their vehicle in front of them. Lester also testified he fled the vehicle and was apprehended at the intersection of 74th Street and Dante Avenue. Lester further testified he never heard Otis admit to being the owner of the handgun at the scene of the police stop.

¶ 13    Defendant testified he did not possess a handgun when the police parked in front of Tenika's vehicle. According to defendant, he fled in the mistaken belief a protective order Tenika had obtained remained in force. Defendant denied tossing the handgun into Tenika's vehicle and discarding ammunition while being pursued by the police. Defendant testified he walked back to Tenika's vehicle and surrendered to the police.

¶ 14    In rebuttal, the State called Officer Kubiak, who testified she and Officer Hernandez were involved in arresting defendant. According to Officer Kubiak, when she arrived at the scene of the incident, Otis and Tenika were in the Nissan. Officer Kubiak also testified Otis never admitted he was the owner of the handgun recovered from the passenger floorboard of the vehicle. Officer Sobczyk also testified in rebuttal that Otis never admitted he was the owner of the handgun.

¶ 15    Following closing arguments, the trial court found defendant guilty of violating the armed habitual criminal statute, two counts of UUWF, and eight counts of AUUW.

¶ 16    On January 3, 2012, defendant filed a motion to reconsider. In the motion, defendant first argued the State relied on two certified copies of convictions, one of which (possession of a controlled substance with intent to deliver) was under the name of Edward Burns, while the other (AUUW) was under the name of Damion Smith. Defendant argued the State failed to adduce any evidence that he is the same person as Damion Smith. Second, defendant argued the State failed to prove he knowingly possessed a firearm.

¶ 17    On January 6, 2012, the trial court held a hearing, commencing with a *pro se* motion alleging ineffective assistance of defense counsel, which the trial court denied. The trial court then heard argument on the motion to reconsider. The trial court denied the motion regarding the argument the State failed to prove defendant knowingly possessed a firearm. The trial court, however, granted the motion to reconsider in part regarding the State's failure to adduce any evidence defendant is the same person as Damion Smith. The trial court observed this ruling applied to the UUWF and armed habitual criminal charges, but not the remaining counts, where the prior felony conviction is not an element of the offense.

¶ 18    On February 10, 2012, the trial court proceeded to sentence defendant on the two remaining AAUW counts (counts VI and X). Following argument on the issue of whether defendant should be sentenced as a Class X offender, and hearing factors in aggravation and mitigation of the offense, including testimony from Tenika, the trial court sentenced defendant on count 6 of the indictment to 10 years in prison for violating section 24-1.6(a)(1), (a)(3)(A)

of the AUUW statute. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008). The sentencing order reflects defendant, having been convicted of a Class 2 offense, was sentenced as a Class X offender. The sentencing order does not reflect a sentence upon count X of the indictment, which addressed a violation of section 24-1.6(a)(2), (a)(3)(A) of the AUUW statute. 720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2008).

¶ 19 On March 12, 2012, defendant filed a timely notice of appeal to this court. Defendant filed an initial brief arguing his conviction cannot stand because section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute unconstitutionally infringes upon his right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II). On September 12, 2013, shortly before defendant filed his reply brief, our supreme court determined section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute was unconstitutional on its face. *Aguilar*, 2013 IL 112116, ¶ 22. On September 19, 2013, defendant filed an emergency motion in this court, seeking a summary reversal of his conviction and an immediate issuance of a mandate to this effect. On September 23, 2013, the State filed a reply in opposition to the emergency motion. On September 25, 2013, defendant filed a reply in support of his motion. On September 30, 2013, this court entered an order denying the emergency motion. Also on September 30, 2013, the State filed a motion for leave to file a surreply in opposition to the emergency motion, which this court denied as moot on October 2, 2013. In addition, on October 4, 2013, this court entered an order setting an expedited supplemental briefing schedule pursuant to Illinois Supreme Court Rule 343(c) (eff. July 1, 2008). On December 12, 2013, this court held oral argument in this case.

¶ 20 On December 19, 2013, our supreme court entered a modified opinion on denial of the State's petition for rehearing in *Aguilar*. *Aguilar*, 2013 IL 112116. In the modified opinion, the court noted:

> "In response to the State's petition for rehearing in this case, we reiterate and emphasize that our finding of unconstitutionality in this decision is specifically limited to the Class 4 form of AUUW, as set forth in section 24-1.6(a)(1), (a)(3)(A), (d) of the AUUW statute. We make no finding, express or implied, with respect to the constitutionality or unconstitutionality of any other section or subsection of the AUUW statute." *Aguilar*, 2013 IL 112116, ¶ 22 n.3.

Chief Justice Garman dissented from the denial of rehearing, concluding the supreme court would have benefitted from further deliberation because the State's petition for rehearing had "fundamentally redefined" the issue in the case. See *Aguilar*, 2013 IL 112116, ¶¶ 33, 36 (Garman, C.J., dissenting). Justice Theis also dissented, observing in part "the implication of the court's holding is that the so-called 'Class 2 form of the offense,' which enhances the penalty for felons, could potentially remain enforceable." *Aguilar*, 2013 IL 112116, ¶ 47 (Theis, J., dissenting).

¶ 21                                  DISCUSSION

¶ 22 The sole issue in this case is whether the Class 2 form of section 24-1.6(a)(1), (a)(3)(A), (d) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)) violates the right

to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II). Section 24-1.6 of the AUUW statute provides in part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode or fixed place of business, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded, and immediately accessible at the time of the offense[.]

* * *

(d) Sentence. Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years. Aggravated unlawful use of a weapon by a person who has been previously convicted of a felony in this State or another jurisdiction is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILCS 5/24-1.6 (West 2008).

Defendant relies on the original decision in *Aguilar*, in which the supreme court determined section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute on its face violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution. *Aguilar*, 2013 IL 112116, ¶ 22. When a statute is held facially unconstitutional, the statute is said to be void *ab initio*. *People v. Blair*, 2013 IL 114122, ¶ 28. A statute declared void *ab initio* "was constitutionally infirm from the moment of its enactment and is, therefore, unenforceable." *Blair*, 2013 IL 114122, ¶ 30.

¶ 23    The State argues that *Aguilar* does not apply to convicted felons such as defendant. Aguilar was found guilty of the Class 4 form of the offense of the AAUW statute and sentenced to 24 months' probation. See *Aguilar*, 2013 IL 112116, ¶ 7. The decision in *Aguilar* relies on the Seventh Circuit Court of Appeals' decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), which our supreme court has interpreted as applying to the Class 4 form of the offense. *Aguilar*, 2013 IL 112116, ¶¶ 19-22. In contrast, the record on appeal in this case establishes defendant was sentenced under the Class 2 form of the offense. The State, while conceding the substantive elements of the offense in this case were identical to those in *Aguilar*, contends defendant here was actually convicted of a different, albeit related, form of the offense.

¶ 24    In general, where a statute initially sets forth the elements of the offense, then separately provides sentencing classifications based on other factors, these factors only enhance the

punishment and do not create a new offense. See *People v. Van Schoyck*, 232 Ill. 2d 330, 338 (2009) (driving while under the influence statute); *People v. Robinson*, 232 Ill. 2d 98, 112 (2008) (involuntary manslaughter statute); *People v. Green*, 225 Ill. 2d 612, 619-20 (2007) (robbery statute); *People v. Smith*, 2012 IL App (1st) 102354, ¶ 110 (attempt statute); see also *People v. White*, 2011 IL 109616, ¶ 26 ("[F]irst degree murder is a single offense–there is no separate offense of 'armed murder' or 'enhanced murder.' "). The modified opinion in *Aguilar*, however, specifies the decision "is specifically limited to the Class 4 form of AUUW." *Aguilar*, 2013 IL 112116, ¶ 22 n.3; compare *People v. Delvillar*, 235 Ill. 2d 507, 510 (2009) (referring to a defendant pleading guilty to "aggravated unlawful use of a weapon by a felon"). Indeed, the modified opinion in Aguilar refers to the "Class 4 form of the offense" repeatedly. *Aguilar*, 2013 IL 112116, ¶¶ 1, 7, 11, 15, 18, 19, 20, 21, 22, 24, 30. The modified ruling left open the issue of whether any other section or subsection of the AUUW is unconstitutional. *Aguilar*, 2013 IL 112116, ¶ 22 n.3. Given the nature of the ruling in *Aguilar*, and its multiple references to the Class 4 form of the offense, we agree "the implication of the court's holding is that the so-called 'Class 2 form of the offense,' which enhances the penalty for felons, could potentially remain enforceable." *Aguilar*, 2013 IL 112116, ¶ 47 (Theis, J., dissenting). Accordingly, we turn to consider the constitutionality of the Class 2 form of the offense in the AUUW statute.

¶ 25        In *Aguilar*, our supreme court observed that the right to keep and bear arms is subject to meaningful regulation. *Aguilar*, 2013 IL 112116, ¶ 21. Such regulations may include, but are not limited to, " '*longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' " (Emphasis added.) *Aguilar*, 2013 IL 112116, ¶ 26 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)). Indeed, the United States Supreme Court described such provisions as "presumptively lawful." *Heller*, 554 U.S. at 627 n.26. Based on similar reasoning, this court has rejected second amendment challenges to other statutes restricting the possession or use of firearms by felons. *E.g.*, *People v. Neely*, 2013 IL App (1st) 120043, ¶ 12 (upholding the UUWF statute); *People v. Garvin*, 2013 IL App (1st) 113095, ¶¶ 26-41 (upholding the armed habitual criminal and UUWF statutes); *People v. Davis*, 408 Ill. App. 3d 747, 750 (2011) (same).

¶ 26        *Aguilar* is further instructive on the mode of constitutional analysis to be employed. In that case our supreme court affirmed Aguilar's other conviction for unlawful possession of a firearm (UPF). *Aguilar*, 2013 IL 112116, ¶ 30. Aguilar's age–17 years old at the time of the offense–was the basis for his conviction under the UPF statute. *Aguilar*, 2013 IL 112116, ¶ 25. Our supreme court, based on the almost 150-year history of laws banning the juvenile possession of firearms, concluded "the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection." *Aguilar*, 2013 IL 112116, ¶ 27.

¶ 27        In this case, the history of prohibitions on the possession of firearms by felons has been expressly recognized by the United States Supreme Court and the Illinois Supreme Court. *Heller*, 554 U.S. at 626; *Aguilar*, 2013 IL 112116, ¶ 26. Thus, we conclude the possession of firearms by felons is conduct that falls outside the scope of the second amendment's

- 7 -

protection.[1] In this case, the Class 2 form of AUUW at issue merely regulates the possession of a firearm by a person who has been previously convicted of a felony. Accordingly, defendant's constitutional challenge to the Class 2 form of the offense in the AUUW statute fails.

¶ 28                                               CONCLUSION

¶ 29        For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30        Affirmed.

---

[1]Prior to *Aguilar*, this court applied intermediate scrutiny to a constitutional challenge of the AAUW statute involving possession of a firearm by an individual convicted of a felony, concluding the statute is a valid exercise of the important governmental interest in protecting the health, safety and general welfare of its citizens. *People v. Brisco*, 2012 IL App (1st) 101612, ¶¶ 51-57. Accordingly, even assuming for the sake of argument that the possession of firearms by felons is conduct that falls inside the scope of the second amendment's protection, we would nevertheless uphold the constitutionality of the specific statute involved in this appeal.